IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**RICHARD TORGERSON,** *et al.*,

     **Plaintiffs,**

v.

**LCC INTERNATIONAL, INC.,** *et al.*,

     **Defendants.**

Case No. 16-cv-2495-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiffs bring this action alleging that defendants LCC International, Inc. ("LCC"), Kenny Young, Brian Dunn, Rebecca Stahl, and Dan Moss violated the Fair Labor Standards Act ("FLSA"). Specifically, plaintiffs claim that defendants improperly classified all LCC employees working in a "Migration Analyst" position as exempt from the FLSA's overtime requirements. Plaintiffs, on behalf of themselves and other, similarly situated "Migration Analysts," seek to recover unpaid overtime compensation.

This matter comes before the court on defendants' Cross Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 28). Plaintiffs have filed Suggestions in Opposition (Doc. 44) and defendants replied (Doc. 46). Having considered the arguments advanced by the parties, the court grants defendants' motion in part and denies it in part. The court denies the portion of defendants' motion asking the court to decide the question of class certification. And, for the same reasons, the court declines to decide plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA (Doc. 9) without prejudice to their right to present that request to an arbitrator.

1

## I. Background

As a condition of their employment with LCC, each plaintiff signed an Employee Agreement on Ideas, Inventions and Confidential Information ("Employee Agreement"). Doc. 27-2. In it, plaintiffs agreed to: (1) protect LCC's confidential information; (2) disclose and assign to LCC any invention plaintiffs created during their employment; and (3) refrain from competing with LCC or soliciting LCC employees for 12 months after plaintiffs' employment with LCC concluded. *Id*. at 2-4. The Employee Agreement also provides that plaintiffs' employment at LCC is on an at-will basis. *Id*. at 4. In addition, each plaintiff agreed to arbitrate certain disputes under Section 5.4 of the Agreement. It states:

> 5.4  Arbitration:  Any controversy or claim arising ou[t] of or relating to this Agreement, the breach or interpretation thereof or Employee's employment with LCC shall be settled by arbitration in Arlington, Virginia in accordance with the then prevailing rules of the American Arbitration Association, and judgment upon the award shall be final, conclusive and binding.  All costs of arbitration shall be borne by the losing party, unless the arbitrators decide such costs should be allocated between the parties in particular proportions.  Notwithstanding the foregoing, LCC shall be entitled to seek injunctive or other equitable relief pursuant to the provisions of Section 5.1 hereof in any federal or state court having jurisdiction.

*Id*. at 5.

## II. Analysis

Defendants' motion raises two questions. First, whether Section 5.4 requires the parties to arbitrate the FLSA claims that plaintiffs assert here. Defendant contends that it does. Specifically, defendant contends that the first sentence of Section 5.4 requires plaintiffs "to resolve any employment related disputes with LCC via binding arbitration." Doc. 28 at 2. Plaintiffs counter this argument, asserting that that the arbitration clause is unconscionable, void, and unenforceable against plaintiffs' FLSA claims. Plaintiffs note that the Employee Agreement never mentions the FLSA, employee salary, exemption status, or overtime payments. Plaintiffs

2

thus contend that arbitrating their FLSA claims is improper because plaintiffs never agreed to arbitrate those issues.  Plaintiffs also assert that the court must read the broad phrase "or Employee's employment with LCC," included in Section 5.4, in context with the language proceeding it—*i.e.*, plaintiffs contend that the phrase only requires the parties to arbitrate employment disputes about the specific terms of the Employee Agreement and the "breach and interpretation thereof."  Doc. 27-2 at 5.

If the court determines that plaintiffs' claims are subject to arbitration, it then must answer the second question raised by defendants' motion.  That is, whether the court or the arbitrator is responsible for determining whether plaintiffs can pursue their claims as a class.  Both parties, relying on Eighth Circuit precedent, contend that it is the court's decision whether the FLSA and Section 5.4 of the Employee Agreement permit class arbitration.  Plaintiffs assert that the FLSA permits them to arbitrate collectively.  Defendants contend, however, that the court must order individual arbitrations because the Employee Agreement does not expressly or implicitly authorize class or collective arbitration.

The court addresses both of these questions, in turn, below.  While doing so, the court draws heavily from the principles set out in *Hedrick v. BNC National Bank*, a case our District recently decided, because it analyzes issues substantially similar to those presented here.  ___ F. Supp. 3d ___, No. 15-9358-JAR, 2016 WL 2848920 (D. Kan. May 16, 2016); *see also Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139 (10th Cir. 2014) (reversing district court's denial of motion seeking to compel arbitration of FLSA claims).

### A.  Plaintiffs' FLSA claims fall within the scope of the arbitration provision.

The Federal Arbitration Act ("FAA") applies to written arbitration agreements included in contracts "evidencing a transaction involving commerce."  9 U.S.C. § 2.  The purpose of the

3

FAA is to create a "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As explained in *Hedrick*, a federal district court "should compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement." 2016 WL 2848920, at *1 (citing 9 U.S.C. §§ 2-3).

But arbitration is a matter of contract. Thus, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Instead, the FAA requires that courts enforce and interpret "'agreements to arbitrate, like other contracts, in accordance with their terms.'" *Hedrick*, 2016 WL 2848920, at *2 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). When analyzing the scope of an arbitration provision, any "'[d]oubts should be resolved in favor of coverage.'" *Id.* at *1 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

Our Circuit uses a three-part test to determine whether a dispute falls within the scope of an arbitration provision:

> First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

4

*Sanchez*, 762 F.3d at 1146 (emphasis omitted) (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)).

Applying this test to the arbitration provision in plaintiffs' Employee Agreements, the court concludes that it requires the parties to arbitrate plaintiffs' FLSA claims. The court finds that the arbitration provision—which requires arbitration of any "controversy or claim *arising ou[t] of or relating to* this Agreement, the breach or interpretation thereof or [the] Employee's employment with LCC"—is a broad one. Doc. 27-2 at 5 (emphasis added). Indeed, it "is well settled that a clause providing for arbitration of disputes 'arising out of' an employment agreement constitutes a broad arbitration clause." *Hedrick*, 2016 WL 2848920, at *2 (citing *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274-75 (10th Cir. 2010); *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999)).

But the breadth of Section 5.4 is not, alone, dispositive here. This is so because plaintiffs' claims, on their face, fit squarely within the arbitration provision's plain language. By signing the Employee Agreement, plaintiffs expressly agreed to arbitrate three types of disputes, namely those: (1) arising out of or relating to the Employee Agreement; (2) arising out of or relating to the "breach or interpretation" of the Employee Agreement; and (3) more generally, arising out of or relating to plaintiffs' employment with LCC. Doc. 27-2 at 5. Plaintiffs' claims, seeking unpaid overtime that, they contend, the FLSA requires, arise from and relate directly to plaintiffs' employment at LCC. Thus, plaintiffs have invoked the third category of arbitrable dispute set out in Section 5.4 of the Employee Agreement.

Attempting to avoid arbitration, plaintiffs contend that the phrase "or Employee's employment with LCC" in Section 5.4 of the Employee Agreement is a "catchall" that must be read in context with the proceeding phrase "[a]ny controversy or claim arising out of or relating

5

to this Agreement, the breach or interpretation thereof . . . ." *See* Doc 44 at 11 (citing *United States v. Phillips*, 543 F.3d 1197, 1206 (10th Cir. 2008)).  The court disagrees.  For one, plaintiffs' premise their argument on canons of statutory interpretation and not those of contract interpretation.  *See Phillips*, 543 F.3d at 1206 ("This interpretation of the statutory language is reinforced by the statute's enumerated examples. . . .  Under the venerable interpretive canons of *noscitur a sociis* and *ejusdem generis*, the meaning of a catchall phrase is given precise content by the specific terms that precede it.").  Indeed, "under Kansas law, if the language in a written contract 'is clear and can be carried out as written, there is no room for rules of construction.'" *Bettis v. Hall*, 852 F. Supp. 2d 1325, 1334 (D. Kan. 2012) (quoting *Gore v. Beren*, 867 P.2d 330, 336 (Kan. 1994)).  Here, a rational reading of Section 5.4 cannot support plaintiffs' characterization of the phrase as a "catchall."  Instead, the provision's plain language manifests the parties' intent to create a distinct category of arbitrable issues—*i.e.*, those arising from or relating to plaintiffs' employment with LCC.  The court thus grants defendants' request to stay this case and orders the parties to proceed to arbitration.[1]

### B.  The arbitrator must decide whether plaintiffs can arbitrate as a class.

Having determined that Section 5.4 of the Employee Agreement requires arbitration, the court now turns to the question of whether the court or the arbitrator should decide if plaintiffs can proceed as a class.  Both sides, citing Eighth Circuit precedent, assert that this decision belongs to the court.

---

[1] The arbitration provision mandates Arlington, Virginia, as the place where arbitration will occur. *See* Doc. 2702 at 5.  Designating a locus outside the District of Kansas presents a venue issue, but not a jurisdictional one.  *See 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1054-55 (10th Cir. 2006).  While defendants presented a venue objection when this case was pending in the Western District of Missouri, *see* Doc. 19, they did not object to venue on this basis.  They thus have waived the venue objection recognized in *1mage Software*.  The provision's selection of Virginia as the place for arbitration does not preclude the court from compelling arbitration there, as this order does.

"To determine whether the class arbitration issue is a question for the Court or the arbitrator to decide, the Court must first determine whether the issue is substantive or procedural." *Hedrick*, 2016 WL 2848920, at *3 (citing *Soc'y of Prof'l Eng'g Emps. in Aerospace v. Spirit Aerosystems, Inc.*, 541 F. App'x 817, 819 (10th Cir. 2013)). A substantive issue is one about arbitrability, including "'certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy.'" *Id*. (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013)). Typically, it is the court's responsibility to resolve a substantive issue unless the parties "'clearly and unmistakably provide otherwise.'" *Id*. (quoting *Spahr*, 330 F.3d at 1269). In contrast, a procedural issue encompasses "whether parties have satisfied conditions that allow them to arbitrate." *Spirit Aerosystems, Inc.*, 541 F. App'x at 819 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)). The arbitrator decides procedural issues. *Id*.

In *Hedrick*, our court determined that it was the arbitrator's place to decide whether employees could bring FLSA claims as a class under an arbitration clause resembling Section 5.4 of plaintiffs' Employee Agreement. *See* 2016 WL 2848920, at *5. As relevant here, Judge Robinson concluded:

> [E]ven assuming that the availability of class arbitration is a [substantive] "question of arbitrability," the Court finds that the arbitrator must determine this question because the Employment Agreement provides "clear and unmistakable evidence" that the parties intended the arbitrator to determine questions of arbitrability.
>
> Here, the arbitration clause provides that arbitration will "be administered by the American Arbitration Association (the 'AAA') under its National Rules for the Resolution of Employment Disputes as in effect at the time of the claim or controversy (the 'Rules'). Doc. 7 at 3. These Rules state that "The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration

agreement." Rule 6(a), AAA Employment Arbitration Rules and Mediation Procedures (available at www.adr.org) (last visited May 12, 2016) . . . . Thus, pursuant to the arbitration clause, the arbitrator must determine whether class arbitration falls within the scope of the clause. Further, this District has held that the incorporation of the Rules provides "clear and unmistakable evidence" that the parties intended to delegate [substantive] questions of arbitrability to the arbitrator. *Seahorn v. JC Penney Corp.*, No. 12-CV-2617-CM, 2013 WL 452793, at *1 (D. Kan. Feb. 6, 2013) . . . . Additionally, the seven circuits that have addressed the issue have held that the incorporation of the AAA's Commercial Arbitration Rules—which contain language identical to Rule 6(a) of the Employment Arbitration Rules—in an arbitration clause constitutes "clear and unmistakable evidence" that the parties agreed to arbitrate questions of arbitrability. *See, e.g.*, *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that incorporation of AAA Commercial Arbitration Rules served as clear and unmistakable evidence of parties' intent to delegate questions of arbitrability to arbitrator) . . . .

*Hedrick*, 2016 WL 2848920, at *5.

Judge Robinson's conclusions in *Hedrick* apply equally here. Indeed, as in *Hedrick*, plaintiffs' Employee Agreements call for binding arbitration performed "in accordance with the then prevailing rules of the" AAA. Doc 27-2 at 5. These AAA Rules are the same ones referenced in *Hedrick*.[2] Because Section 5.4 of the Employee Agreements incorporates the AAA Rules, the parties' contract "clearly and unmistakably" requires the arbitrator to decide questions of arbitrability. *See Contec Corp.*, 398 F.3d at 208; *Hedrick*, 2016 WL 2848920, at *5; *Seahorn*, 2013 WL 452793, at *1. The court thus denies the portion of defendants' motion (Doc. 28) asking the court to decide the question of class certification. The also court declines to decide plaintiffs' Motion for Conditional Certification (Doc. 9) without prejudice to their right to present that request to the arbitrator.

---

2   *See* Rule 6(a), AAA Employment Arbitration Rules and Mediation Procedures, available at https://www.adr.org/aaa/faces/rules (last visited July 21, 2016); Rule 7(a), AAA Commercial Arbitration Rules and Mediation Procedures, available at https://www.adr.org/aaa/faces/rules (last visited July 21, 2016).

**IT IS THEREFORE ORDERED THAT** defendants' Cross Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration (Doc. 28) is granted in part and denied in part, as explained in this Order.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA (Doc. 9) is denied without prejudice to their right to present this request to the arbitrator.

**IT IS FURTHER ORDERED THAT** the parties shall file a report by May 5, 2017, advising whether they have resolved their disputes or whether the arbitration is still pending.

**IT IS SO ORDERED.**

**Dated this 10th day of August, 2016, at Topeka, Kansas.**

                                                  **s/ Daniel D. Crabtree**
                                                  **Daniel D. Crabtree**
                                                  **United States District Judge**