IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**RICHARD TORGERSON, et al.,**

   **Plaintiffs,**

v.

**LCC INTERNATIONAL, INC., et al.,**

   **Defendants.**

Case No. 16-cv-2495-DDC-TJJ

## MEMORANDUM AND ORDER

Plaintiffs bring this action alleging that defendants LCC International, Inc. ("LCC"), Kenny Young, Brian Dunn, Rebecca Stahl, and Dan Moss violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Specifically, plaintiffs claim that defendants improperly classified all LCC employees working in a Migration Analyst position as employees exempt from the FLSA's overtime requirements. Plaintiffs, on behalf of themselves and other, similarly situated Migration Analysts, seek to recover unpaid overtime compensation under the FLSA.

On August 10, 2016, the court granted in part and denied in part defendants' Cross Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration ("August 10, 2016 Order"). Doc. 62. In its August 10, 2016 Order, the court concluded that each plaintiff signed an employment agreement that requires them to arbitrate their FLSA claims. *Id.* at 5. The court granted defendants' request to stay the case and compelled the parties to proceed to arbitration. *Id.* at 6. Also, the court denied the portion of defendants' motion asking the court to decide whether the employment agreement permits class arbitration because it determined that the arbitrator must decide that issue. *Id.* at 8. And, for the same reasons, the court declined to

decide plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA without prejudice to their right to present this request to an arbitrator. *Id.*

Plaintiffs have filed a Motion for Reconsideration of the court's August 10, 2016 Order. Doc. 63. Plaintiffs seek reconsideration on two bases. First, plaintiffs ask the court to reconsider its decision to compel arbitration because, plaintiffs contend, a recent Tenth Circuit case presents a change in the controlling law that renders the parties' arbitration agreement unenforceable. Second, even if the court declines to reconsider its decision to compel arbitration, plaintiffs ask the court to grant conditional certification of a collective action because, plaintiffs contend, the court must decide this issue—not the arbitrator—and, if the court refrains from deciding this issue, plaintiffs and the putative plaintiffs will suffer manifest injustice.

Defendants have filed a Brief in Opposition to Plaintiff's Motion for Reconsideration. Doc. 65. Plaintiffs have filed a Reply. Doc. 68. After considering the parties' arguments, the court denies plaintiffs' Motion for Reconsideration. Doc. 63.

**I.    Background**

Plaintiffs each signed an Employee Agreement on Ideas, Inventions and Confidential Information ("Employee Agreement") as a condition of their employment. Doc. 27-2. In it, they agreed to: (1) protect LCC's confidential information; (2) disclose and assign to LCC any invention plaintiffs created during their employment; and (3) refrain from competing with LCC or soliciting LCC employees for 12 months after plaintiffs' employment with LCC concluded. *Id.* at 1–4. The Employee Agreement also provides that plaintiffs' employment at LCC is on an at-will basis. *Id.* at 4. Also, each plaintiff agreed to arbitrate certain disputes under Section 5.4 of the Agreement. It provides:

> 5.4    Arbitration:  Any controversy or claim arising ou[t] of or relating to this Agreement, the breach or interpretation thereof or Employee's employment

> with LCC shall be settled by arbitration in Arlington, Virginia in accordance with the then prevailing rules of the American Arbitration Association, and judgment upon the award shall be final, conclusive and binding. All costs of arbitration shall be borne by the losing party, unless the arbitrators decide such costs should be allocated between the parties in particular proportions. Notwithstanding the foregoing, LCC shall be entitled to seek injunctive or other equitable relief pursuant to the provisions of Section 5.1 hereof in any federal or state court having jurisdiction.

*Id*. at 5. The Employment Agreement also includes a governing law and attorney's fees provision. It provides:

> 5.5 <u>Governing Law; Attorney's Fees.</u> This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without regard to principles of conflicts of law. In the event it is necessary to retain the services of legal counsel in connection with any controversy or claim arising hereunder, the prevailing party shall be entitled to reimbursement of its reasonable attorney's fees and cost of suit.

*Id.*

## II. Legal Standard

D. Kan. Rule 7.3(b) requires that a motion to reconsider "must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." "A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of due diligence." *Comeau v. Rupp*, 810 F. Supp. 1172, 1174–75 (D. Kan. 1992). A party seeking reconsideration may not revisit issues already addressed or assert new arguments or supporting facts that otherwise were available when the party filed the original motion. *Id.* A court has discretion when deciding to grant or deny a motion to reconsider. *Hancock v. Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988); *Shannon v. Pac. Rail Servs.*, 70 F. Supp. 2d 1243, 1251 (D. Kan. 1999).

3

### III. Analysis

Plaintiffs' motion asks the court to reconsider two rulings in its August 10, 2016 Order. First, plaintiffs ask the court to reconsider its decision to compel arbitration. Second, even if the court declines to reconsider its decision to compel arbitration, plaintiffs ask the court to reconsider its decision declining to decide the class certification question. The court addresses each request, in turn, below.

#### A. Should the Court Reconsider Its Decision to Compel Arbitration?

Plaintiffs assert that a Tenth Circuit case, *Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016), presents a change in controlling law that requires the court to reconsider its decision to compel the parties to arbitrate this dispute. In *Nesbitt*, the Tenth Circuit applied the "effective vindication exception" to the Federal Arbitration Act ("FAA") to invalidate an arbitration agreement. *Id.* at 377. The effective vindication exception "originated as dictum in *Mitsubishi Motors* [*Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 105 S. Ct. 3346, 87 L.Ed.2d 444 (1985)], where [the Supreme Court] expressed a willingness to invalidate, on 'public policy' grounds, arbitration agreements that operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (further quotation omitted)). The Tenth Circuit explained in *Nesbitt* that the effective vindication exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights," and "would perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* (quoting *Am. Express Co.*, 133 S. Ct. at 2310–11).

Plaintiffs assert that the Employment Agreement's fee-shifting and cost-shifting provisions (contained in sections 5.4. and 5.5) expose them to a substantial risk that they would

4

have to bear the costs and fees of arbitration if their claims fail. Plaintiffs assert that these provisions of the parties' arbitration agreement prevent them from effectively vindicating their statutory rights under the FLSA. And, thus, plaintiffs assert, the court should reconsider its decision compelling the parties to arbitration. Plaintiffs' request for reconsideration fails for multiple reasons, as described below.

### 1. *Nesbitt* is not a change in the controlling law.

The Tenth Circuit decided *Nesbitt* on January 5, 2016, several months before the parties submitted their briefing and the court issued its August 10, 2016 Order. Given this timing, defendants argue that *Nesbitt* is not a change in the controlling law and thus provides no basis for reconsideration. Plaintiffs respond, explaining that Eighth Circuit law governed this case when defendants filed their Motion requesting the court to compel arbitration. Indeed, plaintiffs filed this case in the Western District of Missouri. Doc. 1. The parties briefed the arbitrability issue while the case was pending in the Western District of Missouri. Docs. 28, 44, 46, 49, 50. On July 12, 2016, the Western District of Missouri transferred the case to our court. Doc. 55.

The parties did not raise the issue that *Nesbitt* presents in their earlier briefing on defendants' Motion to Compel Arbitration. Plaintiffs contend that they could not assert an argument based on *Nesbitt* because controlling Eighth Circuit law does not support it. *See* Doc. 68 at 3 ("*Nesbitt* . . . is counter to the controlling authority in the Eighth Circuit on the issue of effective vindication."). Plaintiffs cite *Torres v. Simpatico, Inc.*, 781 F.3d 963 (8th Cir. 2015), to "highlight[ ] the difference and difficulty in raising the same [issue] in that circuit." Doc. 64 at 7. But, contrary to plaintiffs' description of the case, *Torres* specifically acknowledged the effective vindication exception, citing two Supreme Court cases that had recognized its existence. *Torres*, 781 F.3d at 970 (first citing *Am. Express Co.*, 133 S. Ct. at 2310–11; then

citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)). The Eighth Circuit refused to apply the exception, however, because plaintiffs "failed to carry their burden to show that the costs of individual arbitration 'are so high as to make access to the forum impracticable' or to prevent them from effectively vindicating their rights in the arbitral forum." *Id.* (first quoting *Am. Express Co.*, 133 S. Ct. at 2310–11; then citing *Randolph*, 531 U.S. at 91).

*Torres* demonstrates that plaintiffs could have raised the effective vindication exception earlier. Plaintiffs could have relied on *Torres*' recognition of the exception. And, they could have presented information sufficient to meet their burden to show that the Employment Agreement's fee-shifting and cost-shifting provisions prevent them from vindicating their rights under the FLSA. They failed to make either showing. Also, the parties did not submit any additional briefing or other submissions on the arbitrability issue before August 10, 2016. Nor did the parties ask the court to establish another briefing schedule for the arbitrability issue so that the parties could revise their submissions to cite appropriate Tenth Circuit case law. Under these facts, the court cannot find that *Nesbitt* amounts to a change in the controlling law[1] sufficient to support a motion for reconsideration.

---

[1] In their reply brief, plaintiffs cite to other, recent cases involving the enforceability of arbitration agreements that include a waiver of the right to bring class or collective actions involving employment-related claims in any forum whatsoever, whether arbitral or judicial. Doc. 68 at 4 (collecting cases and describing the Circuit split on the issue). The court does not address arguments raised for the first time in a Reply. *Guang Dong Light Headgear Factory Co. v. ACI Int'l, Inc.*, 521 F. Supp. 2d 1153, 1173 n.70 (D. Kan. 2007) (citing *Hutton Contracting Co. v. City of Coffeyville*, 487 F.3d 772, 788 (10th Cir. 2007)). Even so, the court notes that the Employment Agreement here contains no express waiver of the right to bring collective or class action claims in any forum. And, even if the Employment Agreement specifically included such waiver language, our court has addressed this issue, concluding that such provisions do not render an arbitration agreement unenforceable. *See Bell v. Ryan Transp. Serv., Inc.*, 176 F. Supp. 3d 1251, 1263 (D. Kan. 2016) (Lungstrum, J.) (holding that "the Tenth Circuit, if faced with this issue" would follow "those Circuit Court of Appeals . . . [that] have permitted the use of class action waivers in arbitration agreements"); *see also Pollard v. ETS PC, Inc.*, __ F. Supp. 3d __, 2016 WL 2983530, at *10 (D. Colo. May 12, 2016) (agreeing with the majority view that collective or class action waivers in arbitration agreements are enforceable).

> **2. Even if *Nesbitt* represents a change in the controlling law, it does not require the court to reconsider its decision because the arbitrator must decide the issue *Nesbitt* presents.**

Even if *Nesbitt* qualified as a change in the controlling law, defendants assert that the court cannot decide whether the fee-shifting and cost-shifting provisions are unenforceable under *Nesbitt*. Defendants argue that the arbitrator must make that decision. Because the court already determined that the arbitrator must decide whether this matter may proceed on a class or collective basis (doc. 62 at 8), defendants contend that the court also must hold that it is the arbitrator who must decide whether the effective vindication exception applies to invalidate the arbitration agreement.

Plaintiffs never respond to this argument in their Reply. Doc. 68. Arguably, their failure to do so amounts to a waiver of this issue. *See In re FCC 11-161*, 753 F.3d 1015, 1100–01 (10th Cir. 2014) (rejecting petitioners' argument because their reply brief was silent on an issue and made no attempt to rebut the respondents' argument); *see also Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (holding that an appellant, who does not respond to an argument in its reply brief, "'waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee'" because the court is not "required to do his work for him and dissect [the appellee's] plausible argument" (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 771 (7th Cir. 1994)). But beyond that, the court agrees with defendants' argument.

In its August 10, 2016 Order, the court held that the parties' arbitration agreement "clearly and unmistakably requires the arbitrator to decide questions of arbitrability." Doc. 62 at 8. The court thus determined that the arbitrator must decide whether plaintiffs can arbitrate this dispute as a class. *Id.* For the same reasons, the court must permit the arbitrator to decide

whether the fee-shifting and cost-shifting provisions of the Employment Agreement render it unenforceable under the effective vindication exception.

As the court explained in its August 10, 2016 Order, when deciding whether an issue is one for the court or the arbitrator to decide, the court first must determine whether the issue is substantive or procedural.  *Hedrick v. BNC Nat'l Bank*, ___ F. Supp. 3d ___, 2016 WL 2848920, at *3 (D. Kan. May 16, 2016) (citing *Soc'y of Prof'l Eng'g Emps. in Aerospace v. Spirit Aerosystems, Inc.*, 541 F. App'x 817, 819 (10th Cir. 2013)).  Substantive issues include questions of arbitrability, or "certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy."  *Id*. (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 n.2 (2013)).  Typically, it is the court's responsibility to decide substantive issues unless the parties "clearly and unmistakably provide otherwise."  *Id*. (quoting *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003)).  In contrast, a procedural issue encompasses "whether parties have satisfied conditions that allow them to arbitrate."  *Spirit Aerosystems, Inc.*, 541 F. App'x at 819 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002)).  The arbitrator decides procedural issues.  *Id*.

> The Supreme Court has amplified this distinction, explaining:
>
> Linguistically speaking, one might call any potentially dispositive gateway question a "question of arbitrability," for its answer will determine whether the underlying controversy will proceed to arbitration on the merits. The Court's case law, however, makes clear that, for purposes of applying the interpretive rule, the phrase "question of arbitrability" has a far more limited scope. The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Howsam*, 537 U.S. at 83–84 (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)).  "And if there is doubt [whether the arbitrator should decide a certain issue, the court] should resolve that doubt 'in favor of arbitration.'"  *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626).

The court already has determined that the parties' arbitration agreement confers broad authority on the arbitrator to decide not only procedural issues, but also substantive ones.  Doc. 62 at 8.  The Employment Agreement calls for binding arbitration performed "in accordance with the then prevailing rules of the American Arbitration Association."  Doc 27-2 at 5.  Those rules state:  "The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Rule 7(a), AAA Employment Arbitration Rules and Mediation Procedures, https://www.adr.org/aaa/faces/rules (last visited January 3, 2017); *see also* Rule 7(a), AAA Commercial Arbitration Rules and Mediation Procedures, https://www.adr.org/aaa/faces/rules (last visited January 3, 2017).  Following established precedent, the court concluded that incorporation of the AAA Rules provides clear and unmistakable evidence that the parties intended to delegate substantive questions of arbitrability to the arbitrator.  Doc. 62 at 8 (citing *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Hedrick*, 2016 WL 2848920, at *5; *Seahorn v. JC Penney Corp.*, No. 12-CV-2617-CM, 2013 WL 452793, at *1 (D. Kan. Feb. 6, 2013)).  So, the court concluded that the arbitrator must decide whether plaintiffs can assert their claims on a class basis.

Likewise, even if the effective vindication issue qualifies as a substantive one, the arbitrator must decide this issue because the parties "clearly and unmistakably" agreed that the arbitrator would decide questions of arbitrability.  *Howsam*, 537 U.S. at 83; *see also Harling v.*

9

*Ado Staffing, Inc.*, No. 3:13-cv-1113-J-34JRK, 2014 WL 1410519, at *3–5 (M.D. Fla. Feb. 21, 2014) (concluding that an arbitration agreement, incorporating the AAA's Employment Arbitration Rules, provided clear and unmistakable evidence that the parties intended the arbitrator to decide questions about the validity and scope of the agreement, including whether the agreement forces plaintiff to incur prohibitive costs in arbitration or impermissibly takes away her right to attorney's fees if she prevailed). The court thus cannot decide this issue.

### 3. Even if the court could reconsider its decision based on *Nesbitt*, plaintiffs fall well short of their burden to satisfy *Nesbitt*.

Finally, even if the court properly could decide the issue, plaintiffs fail to meet their burden to show that *Nesbitt* provides a basis for the court to reconsider its August 10, 2016 Order compelling the parties to arbitrate this dispute. *Nesbitt* considered whether an employment agreement containing an arbitration clause required the plaintiff to arbitrate her FLSA claims against the defendants. 811 F.3d at 373. The plaintiff asserted that two provisions in the arbitration agreement effectively deprived her of her rights under the FLSA, and thus was enforceable. *Id.* at 375. The employment agreement required that: (1) the Commercial Rules of the American Arbitration Association, which include fee splitting provisions, applied to the parties' arbitration; and (2) the plaintiff had to bear her own expenses in the arbitration. *Id.* The plaintiff estimated that she likely would incur between $2,320.50 and $12,487.50 in costs simply paying for the arbitrator's time. *Id.* The plaintiff also established by affidavit that she could not afford these costs. *Id.* In addition, the plaintiff asserted that the employment agreement's provision requiring her to bear her own attorney's fees, even if she prevailed, amounted to a waiver of her FLSA rights because the FLSA mandates an award of attorney's fees and costs to a prevailing plaintiff. *Id.*; *see also* 29 U.S.C. § 216(b) (requiring courts to award a prevailing

10

FLSA plaintiff "a reasonable attorney's fee to be paid by the defendants, and costs of the action").

The *Nesbitt* defendants asserted that the agreement did not preclude the arbitrator from awarding attorney's fees to the plaintiff if she prevailed. *Id.* at 380. The defendants recognized that the agreement required the plaintiff to bear her own counsel's expenses, initially. *Id.* But, the defendants argued, the agreement authorized an award of attorney's fees if the plaintiff prevailed because it required the arbitrator to apply federal law "to the fullest extent possible" and incorporated the AAA Commercial Rules—rules that expressly permit post-award fee shifting. *Id.*

The Tenth Circuit disagreed. *Id.* It concluded that the agreement was internally inconsistent and, thus, ambiguous about the availability of a fee award. *Id.* The Circuit explained: "On the one hand, the [employment agreement] expressly states that each party shall bear its own fees and that remedies and forms of relief available in court may be limited by the [employment agreement[,]" but, "[o]n the other hand, the [employment agreement] . . . appear[s] to authorize the arbitrator . . . to include fees in the award" if the plaintiff prevailed. *Id.* Given this ambiguity, the Tenth Circuit concluded: "It is unlikely that an employee in [the plaintiff's] position, faced with the mere possibility of being reimbursed for . . . fees in the future, would risk advancing those fees in order to access the arbitral forum." *Id.* at 380–81 (quoting *Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1234 n.4 (10th Cir. 1999)).

The Tenth Circuit also found that the plaintiff had met her burden to show that the costs of arbitration were prohibitively expensive to render the agreement unenforceable under the effective vindication exception. *Id.* at 379. As stated above, the plaintiff had asserted by affidavit that she could not afford the arbitrator's fees and costs. *Id.* at 375. The Circuit noted

11

that the plaintiff would not incur similar expenses in a judicial forum.  *Id.* at 379 n.2.  Instead, the plaintiff would bear no litigation costs if she prevailed in federal court because of the FLSA's mandatory fee-shifting provisions.  *Id.*

Here, plaintiffs assert that the fee-shifting and cost-shifting provisions in the Employment Agreement are similar to those at issue in *Nesbitt* because they prevent plaintiffs from effectively vindicating their statutory rights under the FSLA.  So, plaintiffs contend, the Employment Agreement here also is unenforceable for the same reason that the Tenth Circuit held *Nesbitt*'s provisions invalid.

Even if the court could decide this issue, the *Nesbitt* facts significantly differ from the record here.  Unlike *Nesbitt*, plaintiffs have provided no information about their inability to pay the costs and fees associated with arbitration.  Without this information, the court cannot decide whether arbitration is prohibitively expensive.  The Supreme Court has not determined "[h]ow detailed the showing of prohibitive expense must be before the party seeking arbitration must come forward with contrary evidence."  *Randolph*, 531 U.S. at 92.  But, the Court has made it clear that the party "seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs."  *Id.*  And, the mere risk that a plaintiff "will be saddled with prohibitive costs is too speculative to justify invalidating an arbitration clause."  *Id.* at 91.

Here, plaintiffs have failed to provide the requisite information to support a determination that the fees and costs associated with arbitration "are so high as to make access to the forum impracticable."  *Nesbitt*, 811 F.3d at 377 (quoting *Am. Express Co.*, 133 S. Ct. at 2310–11).  The only information plaintiffs provide on this topic is a citation to the $3,250 filing fee that arbitration requires.  Doc. 64 at 8.  Plaintiffs also state that they will have to pay the arbitrator's

fees, but they provide no estimate about other costs that they may incur.  And, importantly, plaintiffs provide no information about their inability to pay the fees associated with arbitration.

Without sufficient evidence to support their assertion that the arbitration costs prevent them from vindicating their statutory rights, plaintiffs fail their burden.  *See In Re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1138 (D. Kan. 2003) (holding that plaintiff failed to meet his burden of proof because he "offered absolutely no evidence to support his claim that the costs of arbitration will deny him an effective forum to vindicate his statutory rights").  *E.g.*, *Zambrano v. Strategic Delivery Sols., LLC*, No. 15 Civ. 8410 (ER), 2016 WL 5339552, at *8–9 (S.D.N.Y. Sept. 22, 2016) (holding that plaintiffs had not satisfied their burden to show that the arbitration agreement was unenforceable because plaintiff's claims of prohibitive costs were too speculative); *Leonard v. Del. N. Cos. Sport Serv., Inc.*, No. 4:15 CV 1356 CDP, 2016 WL 3667979, at *4 (E.D. Mo. July 11, 2016) (holding that plaintiff failed to carry his burden to show that arbitration was cost prohibitive because "he has provided no evidence of the specific costs or arbitration fees or his financial inability to afford [ ] them"); *Monteverde v. W. Palm Beach Food & Beverage, LLC*, No. 9:15-CV-81203, 2016 WL 1161224, at *6 (S.D. Fla. Mar. 24, 2016) (distinguishing *Nesbitt* because it was "decided in the context of *evidence* that the individual plaintiff was prohibited—on the basis of costs and the plaintiff's means—from arbitration" but plaintiffs "failed to provide any notable or credible evidence of the same in this case").

Also unlike *Nesbitt*, the Employment Agreement here creates no ambiguity about plaintiff's ability to recover attorney's fees.  The Employment Agreement specifically provides that plaintiffs are entitled to reasonable attorney's fees and cost of suit if they prevail.  This provision is consistent with the fee-shifting provisions of the FLSA.  *See Bell v. Ryan Transp.*

13

*Serv., Inc.*, 176 F. Supp. 3d 1251, 1260 (D. Kan. 2016) (Lungstrum, J.) (explaining that an agreement was unlike the one at issue in *Nesbitt* because "nothing in the agreement . . . expressly limits the remedies or relief available in arbitration" of FLSA claims). The fee-shifting provision is inconsistent with the FLSA, however, because it requires plaintiffs to reimburse defendants for their attorney's fees if defendants prevail. Other courts have held similar fee-shifting provisions unenforceable, but, in those cases, one of two scenarios existed: (1) the plaintiffs presented evidence that they could not afford to pay the defendants' fees if the defendants prevailed in arbitration; or (2) the defendants conceded that the fee-shifting provision made arbitration prohibitively expensive. *See*, *e.g.*, *Pollard v. ETS PC, Inc.*, __ F. Supp. 3d __, 2016 WL 2983530, at *7 (D. Colo. May 12, 2016) (explaining that "[d]efendants laudably concede[d]" that the fee-shifting provisions interfered with plaintiff's effective vindication of their FLSA rights); *Sanchez v. Nitro Lift Techs. LLC*, 91 F. Supp. 3d 1218, 1222 (E.D. Okla. 2015) (concluding that plaintiffs met their burden to submit evidence that was not merely speculative but, instead, established the costs and plaintiffs' inability to pay them if they did not prevail at arbitration); *Daugherty v. Encana Oil & Gas (USA), Inc.*, No. 10-cv-02272-WJM-KLM, 2011 WL 2791338, at *11 (D. Colo. July 15, 2011) ("Plaintiffs' affidavits make plain they have no financial ability to pay [defendant's] attorneys' fees were Defendant to prevail before the arbitrator.").

In contrast here, defendants have not conceded that the fees and costs associated with arbitration prevent plaintiffs from vindicating their rights, and plaintiffs have provided no evidence for the court to make that finding. Without this information, plaintiffs have not satisfied their burden to show that the fee-shifting provision renders the arbitration agreement prohibitively expensive. *See Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 795 (N.D. Ill. 2013) (holding that plaintiffs failed to meet their burden to show that the

arbitration agreement prevented them from vindicating their statutory rights because they did not file affidavits or assert in their briefs that the costs were prohibitively expensive; instead, plaintiffs "provide[d] only the barest assertions that the fees and costs clause . . . makes the arbitration provision unconscionable"); *see also Perkins v. Rent-A-Center, Inc.*, No. 04-2019-GTV, 2004 WL 1047919, at *4 (D. Kan. May 5, 2004) (refusing to find an arbitration agreement's cost-splitting and fee-splitting provisions invalid in a 42 U.S.C. § 1981 action because plaintiffs "presented no evidence indicating that the costs of arbitration are likely to be prohibitively expensive").

In sum, plaintiffs have failed altogether to satisfy their burden to show that the effective vindication exception applies here.  So, even if the court could decide the issue that *Nesbitt* presents, the court still would reach the same conclusion that it reached in the August 10, 2016 Order.  Under the facts here, the parties must submit their dispute to arbitration.

### B. Should the Court Reconsider Its Decision to Decline To Decide the Class Certification Issue?

Plaintiffs assert that the need to avoid manifest injustice requires the court to reconsider its decision denying without prejudice plaintiffs' Motion for Conditional Class Certification.  In its August 10, 2016 Order, the court declined to decide the conditional class certification issue because it determined that the arbitrator must decide whether plaintiffs can proceed collectively under the arbitration agreement.  Doc. 62 at 8.

Plaintiffs argue that this decision "runs counter to [the court's] own precedent which states that the first stage of certification is the 'exclusive procedural mechanism for class certification in actions under the FLSA.'"  Doc. 68 at 5 (quoting *Renfro v. Spartan Comp. Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007)).  Plaintiffs take this quoted language out of context.  In *Renfro*, Judge Vratil explained that 29 U.S.C. § 216(b) provides the exclusive procedural

15

mechanism for FLSA class certifications. 243 F.R.D. at 432. The court's case law does not hold that the court—exclusively—must make the certification decision. Also, unlike the Employment Agreement here, *Renfro* did not involve an arbitration agreement that governed the parties' dispute, much less one that required the arbitrator to decide the class question.

Plaintiffs also contend that "[i]t is not unprecedented for a Court to allow conditional certification of a collective class despite the assertion that putative class members have executed arbitration agreements." Doc. 64 at 10 (citing *Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 818 (W.D. Mo. 2005)). But, in *Davis*, "defendants [had] not moved to compel arbitration at all, although the case [had] been pending for over a year." *Id.* In contrast, defendants here have moved to compel arbitration, and the court has granted that motion. Plaintiffs cite no case law as support for their request that the court should decide the certification issue *after* it has compelled the parties to arbitration.

The court also disagrees that the August 10, 2016 Order produced manifest injustice. Plaintiffs assert that putative plaintiffs may lose their right to assert FLSA claims if they do not receive notice and an opportunity to join this lawsuit before the statute of limitations runs on their claims. But, putative plaintiffs can stop the statute of limitations from running by filing individual claims. Opting-in to this lawsuit is not the only mechanism for preserving a putative plaintiff's claims. Also, defendants assert that all putative plaintiffs are parties to an arbitration agreement—a fact that plaintiffs do not dispute. Arbitration is thus the appropriate forum to present the conditional certification issue.

Finally, plaintiffs argue that the court should decide this issue to promote judicial economy. The court reaches the opposite conclusion. The court finds it inefficient to grant conditional certification before the arbitrator even has decided if plaintiffs can proceed on a

16

collective basis. As defendants assert correctly, granting conditional certification and facilitating the notice and opt-in period would impose additional delays. The most efficient approach is to send the matter to arbitration where, the parties agreed, it belongs. Plaintiffs provide no basis for the court to reconsider its decision denying without prejudice plaintiffs' Motion for Conditional Class Certification. The court defers this issue to the arbitrator.

### IV.     Conclusion

The court rejects plaintiffs' arguments that an intervening change in the controlling law or the need to prevent manifest injustice require the court to reconsider its August 10, 2016 Order. The court thus denies plaintiffs' Motion for Reconsideration (Doc. 63).

**IT IS THEREFORE ORDERED THAT** plaintiffs' Motion for Reconsideration (Doc. 63) is denied.

**IT IS SO ORDERED.**

**Dated this 3rd day of January, 2017, at Topeka, Kansas.**

> s/ Daniel D. Crabtree
> **Daniel D. Crabtree**
> **United States District Judge**