# EXHIBIT "7"

IN ARBITRATION
AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| **RICHARD TORGERSON, individually, and on behalf of all others similarly situated,**<br><br>　　　　　**Claimants,**<br><br>　　　　　**v.**<br><br>**LCC INTERNATIONAL, INC.,**<br><br>　　　　　**Respondent.** | **Case No. 01-17-0000-3776** |

## RESPONDENT'S MOTION FOR CLAUSE CONSTRUCTION AWARD DISMISSING COLLECTIVE ACTION ALLEGATIONS

　　　　Pursuant to Section 3 of the American Arbitration Association's Supplemental Rules for Class Arbitration, Respondent LCC International, Inc. ("LCC" or "Respondent") moves for a clause construction award dismissing the collective action allegations in Claimant Richard Torgerson's Demand for Arbitration and directing this matter to proceed as an individual arbitration, which it properly is. As grounds for its Motion, LCC states as follows:

　　　　1.　　Mr. Torgerson, who formerly worked as Migration Analyst and Senior Migration Analyst at LCC, has filed a Demand for Arbitration alleging that LCC misclassified its Migration Analyst position as exempt from the overtime provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"). He claims that LCC failed to pay him and similarly situated Migration Analysts overtime compensation allegedly due and owing in those weeks in which they worked more than 40 hours.

　　　　2.　　Importantly for purposes here, Mr. Torgerson wants to arbitrate not only his claim in this arbitration, but also the claims of others similarly situated employees pursuant to the FLSA's collective action device, 29 U.S.C. § 216(b). Mr. Torgerson cannot do this, however,

1

because at the start of his employment with LCC, he signed an Employee Agreement on Ideas, Inventions and Confidential Information ("Employee Agreement").  That Agreement, *inter alia*, requires him to resolve any employment related disputes with LLC via binding arbitration.  Notably, the Employee Agreement does not authorize class, collective or group arbitration in any form.

3. Because the Employee Agreement does not expressly authorize any form of arbitration other than individual arbitration, binding Supreme Court precedent controls the result here and prevents Mr. Torgerson from pursuing any class, collective or group claims in this proceeding.  *See Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662 (2010); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011).

4. In fact, by Award date October 24, 2014, another arbitrator in an arbitration involving the *exact same* position and arbitration provision, ruled as such.  *Nasim Khan et al v. LCC International, Inc.*, AAA 01-14-0000-6008 (Oct. 24, 2014), (Partial Final Clause Construction Award ("Clause Construction Award").  This prior, final ruling both collaterally estops Mr. Torgerson from arguing /to the contrary and, regardless, establishes the propriety of the same result here.

WHEREFORE, the Arbitrator should grant LCC's Motion and enter a final clause construction award dismissing Mr. Torgerson's collective action allegations, further directing that this arbitration proceed on an individual basis as the parties mutually agreed in the Employee Agreement.  The Arbitrator should also order that any potentially similarly situated claimants who have purported to join this arbitration must file their claims on an individual basis in accordance with the arbitration provision in their respective Employee Agreements.

Dated: June 2, 2017                                      Respectfully submitted,

                                                         */s/ James N. Boudreau*
                                                         James N. Boudreau, Esq.
                                                         Adam R. Roseman, Esq.
                                                         Greenberg Traurig, LLP
                                                         2700 Two Commerce Square
                                                         2001 Market Street
                                                         Philadelphia, PA 19103
                                                         215.988.7833 (Telephone)
                                                         215.988.7801 (Telecopy)

                                                         *Attorneys for Respondent*

## CERTIFICATE OF SERVICE

I, Adam R. Roseman, hereby certify that on this 2nd day of June 2017, a true and correct copy of Respondent LCC International Inc.'s Motion for a Clause Construction Award Dismissing Collective Action Allegations, its Memorandum in Support of the Motion, corresponding exhibits and Proposed Order were served upon the following counsel via email and regular mail.

Gregory P. Goheen<br>
Robert L. Turner<br>
McAnany, Van Cleave & Phillips, P.A.<br>
10 E. Cambridge Circle Drive, Suite 3<br>
Kansas City, KS 66103<br>
ggoheen@mvplaw.com<br>
rturner@mvplaw.com

<i>/s Adam R. Roseman</i><br>
Adam R. Roseman

IN ARBITRATION
AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| RICHARD TORGERSON, individually, and on behalf of all others similarly situated,<br><br>        Claimants,<br><br>        v.<br><br>LCC INTERNATIONAL, INC.,<br><br>        Respondent. | Case No. 01-17-0000-3776 |

**MEMORANDUM IN SUPPORT OF RESPONDENT'S MOTION FOR CLAUSE CONSTRUCTION AWARD DISMISSING COLLECTIVE ACTION ALLEGATIONS**

## I.  INTRODUCTION

Claimant Richard Torgerson ("Claimant" or "Mr. Torgerson") is a former Migration Analyst and Senior Migration Analyst for Respondent LCC International, Inc. ("Respondent" or "LCC").  He claims that LCC misclassified the Migration Analyst position (whether Senior or not) as exempt from the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and therefore owes him, and others who served in the role, overtime pay.  Thus, when he filed his arbitration demand, he did so not only on behalf of himself but others he claims are similarly situated to him.  In other words, he wants to arbitrate this matter as a collective action under the FLSA's collective action device, 29 U.S.C. § 216(b).

Mr. Torgerson, however, is not legally entitled to pursue a collective action in arbitration. First, the issue has already been decided against Mr. Torgerson.  In *Nasim Khan et al v. LCC International, Inc.*, AAA 01-14-0000-6008 (Oct. 24, 2014), (Partial Final Clause Construction Award ("Clause Construction Award"), **Ex. 1 to Ex. A,** Declaration of Adam Roseman ("Roseman Decl.")), a case involving the *exact same* position and Employee Agreement on

Ideas, Inventions and Confidential Information ("Employee Agreement"), an arbitrator ruled that the Employee Agreement's arbitration provision does not authorize the pursuit of class, collective or group actions. This partial final award, with which Mr. Torgerson is in privity, collaterally estops him from re-litigating the issue here.

Regardless, and as explained in detail below, on its face, the Employee Agreement contains no provision authorizing class, collective or group arbitration. Based on binding Supreme Court precedent, the lack of such express authorization effectively dooms Mr. Torgerson's desire to pursue any form of collective relief. He must pursue his claim, if at all, on an individual basis because that is what he agreed to do. As a result, the Arbitrator, just as the arbitrator in *Khan* did, should enter a final clause construction award ruling that the arbitration provision does not permit this arbitration to proceed on behalf of a group and dismissing the collective action allegations contained in Mr. Torgerson's Demand for Arbitration.

## II.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE

LCC is a technical services company that provides telecom services to wireless operators worldwide. **Ex. A to Demand for Arbitration,** Federal Court Complaint), ¶ 9. Mr. Torgerson is a former Migration Analyst and Senior Migration Analyst who started his employment with LCC in February 2013.[1]  **Ex. B to Demand for Arbitration,** Mr. Torgerson's Executed Employment Agreement). He claims that LCC misclassified the Migration Analyst position – whether Senior Migration Analyst or not – as exempt from the FLSA's overtime provisions, and that LCC therefore owes him overtime pay in those weeks in which he can prove they worked more than 40 hours. Ex. A to Demand for Arbitration, ¶¶ 16-24. According to Mr. Torgerson, all Migration Analysts are similarly situated in that all are subject to LCC's same policy and

---

[1] Mr. Torgerson resigned his employment with LCC in March 2017.

2

practice of misclassifying them as exempt from the FLSA's overtime requirements.  **Ex. A to Demand to Arbitration**, Comp. ¶¶ 21-24.  All Migration Analysts also allegedly performed the same job duties, routinely worked over 40 hours per week, and never received overtime compensation.  *Id.* at ¶ 18-20; 24; 31.

Mr. Torgerson signed an Employee Agreement as a condition of employment that obligates him to arbitrate any dispute he may have with LCC, like this one, that arises out of his employment.  (**Ex. B to Demand for Arbitration,** Mr. Torgerson's Executed Employment Agreement).  The Employee Agreement is a contract expressly "made and entered into . . . by and between LCC" and the individual employee who signs it.  (*Id.*, 1).  The Employee Agreement references and defines "the 'Employee'" as the undersigned employee, meaning the single individual who executes the Agreement.  (*See Id.*, 1).  The Employee Agreement contains a number of provisions related to the Employee's employment with LCC.

Pertinent here is that the Employee Agreement contains an express arbitration provision.  It states that "[a]ny controversy or claim arising ou[t] of or relating to . . . Employee's employment with LCC shall be settled by arbitration in Arlington, Virginia." (*Id.*, § 5.4).  The provision states that the rules of the American Arbitration Association ("AAA") shall govern any arbitration that takes place pursuant to its terms.[2]  (*Id.* at § 5.4).  It also provides that the losing party shall bear the costs of arbitration unless the arbitrators decide otherwise, which is no different than if in court.  (*Id.*)  Similarly, should the individual employee prevail on the merits of his or her claims in arbitration, nothing in the Employee Agreement prohibits the employee from recovering whatever relief he or she would be entitled to had he or she brought the claim(s) in

---

[2] It is undisputed that the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*, applies to the Employee Agreement.

3

court, including attorneys' fees and costs. (*Id.* at § 5.5). Lastly, the arbitration provision, on its face, does not authorize arbitration on a class or multi-plaintiff or multi-claimant basis.

In fact, in June 2014, four Migration Analysts who each executed a virtually identical Employee Agreement as Mr. Torgerson filed an arbitration demand with the AAA asserting the exact same claim that Mr. Torgerson asserts. **Ex. 2 to Ex. A**, Roseman Decl. Notably, Mr. Torgerson was a member of the putative FLSA collective in that case (though he did not opt-in to it).[3] The arbitrator in that case concluded that the Employee Agreement "does not authorize arbitration of group or collective claims." *Khan, et al v. LCC Int'l Inc.*, AAA 01-14-00006008 (Oct. 24, 2014) (Partial Final Clause Construction Award ("Clause Construction Award"), **Ex. 1 to Ex. A**, Roseman Decl., p. 6-10)). In so ruling, the arbitrator explained that "there is nothing in the unambiguous language of the [a]rbitration [provision], explicit or implicit, to authorize collective arbitration." *Id.* at 11.

Before the *Khan* arbitration and since, LCC has never administered any class, collective or group claims under this arbitration. Declaration of Daniel J. Moss, ¶ 4, attached as **Ex. B**. In addition to the *Khan* Claimants, other LCC employees have interpreted the arbitration to prohibit group or class arbitration. *Id.* at ¶ 3. Former LCC employees have filed *six* separate arbitrations against LCC alleging that it improperly classified them as an exempt employee and failed to pay them overtime wages as allegedly required by the FLSA and seeking relief on an individual basis. *Id.*

---

[3] In an effort to join the proposed collective action under 29 U.S.C. § 216(b), Nasim Khan, Rochelle Robinson, Farshid Hoorfar, and Brad Duccy attached executed consent-to-sue forms to the Demand for Arbitration in *Khan et al v. LCC International, Inc.*

4

### III. THE ARBITRATOR MUST DISMISS THE COLLECTIVE ACTION ALLEGATIONS IN CLAIMANT'S ARBITRATION DEMAND.[4]

#### A. Claimant Is Collaterally Estopped From Asserting That The Arbitration Provision Permits Class Or Group Arbitration.

To start, although Mr. Torgerson would like to re-litigate the question of whether the Employee Agreement permits him to pursue a collective action in this arbitration, the reality is that another arbitrator has already answered the question against him and that adverse answer binds him. The doctrine of "collateral estoppel[5] precludes the same parties to a prior proceeding from litigating in a subsequent proceeding any issue of fact that was actually litigated and essential to a final judgment in the first proceeding." *Glasco v. Ballard*, 249 Va. 61, 64 (Va. 1995). Collateral estoppel applies when:

> (1) the issue to be precluded is identical to the issue already litigated; (2) the issue was actually determined in the prior proceeding; (3) the determination of the issue was essential to the decision in the prior proceeding; (4) the prior judgment was final and valid; and (5) the party against whom estoppel is asserted was a party to or in privity with a party in the prior action and had a full and fair opportunity to litigate the issue.

---

[4] The AAA's Employment Dispute Resolution rules govern the procedures to be used in arbitrations commenced pursuant to the Employment Agreement. (Exhibit A at § 5.4) In addition, the Supplementary Rules for Class Arbitrations "apply to any dispute arising out of an agreement that provides for arbitration pursuant to any of the rules of the [AAA]." Supplementary Rules, Section 1. Thus, the Supplementary Rules apply in this arbitration. The Supplementary Rules provide that "[u]pon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the 'Clause Construction Award')." Supplementary Rules, Section 3.

[5] Principles of res judicata and collateral estoppel apply to arbitration proceedings. *See Epoxy Systems, Inc. v. Kjellstrom and Lee, Inc.*, 29 Va. Cir. 263 (Va. Cir. Ct. 1992). "When arbitration affords opportunity for presentation of evidence and argument substantially similar in form and scope to judicial proceedings, the award should have the same effect on issues necessarily determined as a judgment has." Restatement (Second) of Judgments §84 cmt. c (1982).

5

*Reber v. Trident Sys., Inc.*, No. 13-348, 2015 WL 1258330, at *3 (E.D. Va. Mar. 17, 2015) (internal cites omitted).  Privity exists for purposes of collateral estoppel when the parties' interests are so identical with another that he represents the same legal right. *State Farm Fire & Casualty Co. v. Mabry*, 255 Va. 286 (Va. 1998).  Whether privity exists requires a careful examination of the totality of circumstances in a given case. *Id.* at 289-90 (citing *Angstadt v. Atlantic Mutual Insurance Co.,* 249 Va. 444, 447 (Va. 1995)).  In addition, there must be mutuality; meaning that the litigant asserting collateral estoppel "would have been bound had the litigation of the issue in the prior action reached the opposite result." *Angstadt*, 249 Va. at 446–47.

LCC can establish each of the elements of collateral estoppel.  As an initial matter, Mr. Torgerson cannot seriously dispute the first four elements.  In *Khan*, the parties fully briefed and Arbitrator Healey decided the identical issue before this Arbitrator; whether the arbitration provision in a Migration Analyst's Employee Agreement permits LCC employees to arbitrate on a class, collective or group basis.  **Ex. 3 to Ex. A**, Roseman Decl. is the briefing regarding the *Khan* Motion for Clause Construction Award.  This was the sole issue addressed in Arbitrator Healy's October 24, 2014 Clause Construction Award, an Award that was final and valid for collateral estoppel purposes.  *See Epoxy Sys., Inc. v. Kjellstrom & Lee, Inc.*, 29 Va. Cir. 263, 1992 WL 885004 at *2 (concluding defendants collaterally estopped from re-litigating claim that was decided in prior arbitration); see also *M.J. Woods, Inc. v. Conopco, Inc.,* 271 F. Supp. 2d 576, 581 (S.D.N.Y. 2003) ("It has become well-settled that collateral estoppel applies to issues resolved in arbitration, assuming there has been a 'final determination on the merits, notwithstanding a lack of confirmation of the award.'") (quoting *Jacobson v. Fireman's Fund Insurance Co.*, 111 F.3d 261, 267-68 (2d Cir. 1997)).

Next, the parties in this case are the same or in privity with the parties in *Khan*. First, LCC was the respondent in *Khan* and is here as well. Second, even though Mr. Torgerson was not a named party in *Khan*, he is in privity with the *Khan* claimants ("*Khan* Claimants") because his interests are *exactly identical* to theirs. *See e.g.*, *Ambrosia v. Cogent Commc'ns, Inc.*, No. 14-02182, 2014 WL 4744409, at *2 (N.D. Cal. Sept. 22, 2014) (concluding that employees that did not join prior FLSA collective action nonetheless "share the interests of the parties" with respect to prior litigation's ruling on class certification). Mr. Torgerson's Employee Agreement contains the same arbitration provision that was in the Employee Agreements that each of the *Khan* Claimants executed. Like the *Khan* Claimants, Mr. Torgerson filed a Demand for Arbitration, on behalf of himself and all others similarly situated, alleging that LCC improperly classified him as an exempt employee and failed to pay him overtime wages. The *Khan* Claimants, like Mr. Torgerson, would have arbitrated their claims on a group or class basis but for an arbitrator's ruling that the same arbitration provision did not permit it. As further evidence of privity, if Arbitrator Healy found that the arbitration provision in question in *Khan* permitted group or class arbitration, Mr. Torgerson would have been eligible to opt-in to that arbitration as a potentially similarly situated claimant. In short, Mr. Torgerson is in privity with the *Khan* Claimants because his legal interest is the same as that of the *Khan* Claimants – to pursue an FLSA claim in arbitration on a group or class basis.

Finally, mutuality exists because Arbitrator Healy's Clause Construction Award in *Khan* would have bound LCC, the party invoking collateral estoppel, had he found that the arbitration provision permitted group or class arbitration. In other words, if Arbitrator Healy ruled against LCC, LCC would be collaterally estopped from re-litigating whether the arbitration provision permitted class or group arbitration in this case.

7

In sum, collateral estoppel operates to preclude Mr. Torgerson from asserting that the arbitration provision in his Employee Agreement permits group arbitration because Arbitrator Healy, in an identical arbitration, concluded that it does not.

**B.     LCC Did Not Expressly Agree To Submit To Class Arbitration As Arbitrator Healy Found.**

Collateral estoppel aside, Mr. Torgerson cannot pursue a collective action in this arbitration because LCC never agreed that he could.  As the Employee Agreement's terms make plain, the parties only agreed to individual arbitration.  It is beyond well settled that arbitration is strictly a matter of contract; it is a way to resolve disputes—but only those disputes—that the parties have agreed to submit to arbitration.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).  Thus, in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 684 (2010), the United States Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (emphasis in original).  And, importantly, the Supreme Court explained that one cannot construe a contract's silence on the issue as the requisite consent to class, collective or group arbitration.  *Id.*

Common law contract principles reflect the same rule, *i.e.* that the law will not read into an agreement a term that does not exist within the agreement itself.  Specifically, under Virginia law—which governs Mr. Torgerson's Employee Agreement (*see* **Ex. B to Demand for Arbitration**, Mr. Torgerson's Executed Employment Agreement at § 5.5)—a court will not interpret a contract by reading extraneous terms into it unless ambiguities arise from words in the contract itself.  *See, e.g.*, *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc.*, 287 Va. 425, 429 (Va. 2014) ("When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself.") (internal citations omitted);

8

*PMA Capital Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (Va. 2006) (stating contracts are to be "construed as written, without adding terms that were not included by the parties").

The arbitration provision in Mr. Torgerson's Employee Agreement is unambiguous. There is no agreement to participate in class, collective or group arbitration. Rather, the use of the singular throughout the Employee Agreement reveals an agreement to arbitrate with one individual employee: "the 'Employee.'" The only parties to the Employee Agreement are LCC on the one hand, and "the undersigned employee of LCC (the 'Employee')," on the other. (**Ex. B to Demand for Arbitration,** Mr. Torgerson's Executed Employment Agreement). The agreement to settle any disputes arising out of the Employee's employment does not include an agreement that the Employee may also arbitrate claims on behalf of others.

Arbitrator Healy, as explained above, reached this very decision based on the provision's plain language, which is undeniably silent on the issue of group or classwide arbitration. He explained:

> The plain meaning of the words in the Arbitration Claus here establish an unambiguous dispute resolution mechanism to address disputes individually, not collectively, between just two named parties – Respondent [LCC] and the "undersigned" Employee, in the singular – confirmed by approximately 49 references to the signatory "Employee" throughout the Arbitration Clause and the Employee Agreement. The Arbitrator is unable to perceive a basis in the Arbitration Clause to authorize class arbitration, either explicitly or implicitly, or to indicate consent or agreement the arbitration of class claims. Contrary to Claimant's suggestions, the fact that the Arbitration Clause does not expressly bar class arbitration does not support an inference of permissibility where the contract on its face is so bilateral in both form and substance.

**Ex. 1 to Ex. A,** Roseman Decl. at 7. This Arbitrator should follow Arbitrator Healy's reasoning. There is simply no indication whatsoever that the parties agreed to group arbitration.

In sum, "parties may specify *with whom* they choose to arbitrate their disputes," *Stolt-Nielsen*, 559 U.S. at 683, and LCC and Mr. Torgerson have done so here. The Employee

9

Agreement at issue here reveals the parties' unambiguous intent that any contemplated arbitration proceed between LCC and one—"the"—Employee, *i.e.,* Mr. Torgerson.

### C. There Is No Valid Contractual Basis For Concluding That LCC Agreed To Submit To Group Arbitration.

Because the parties only agreed to arbitration between LCC and Mr. Torgerson individually, there is no need for further analysis of whether the Employee Agreement authorizes class arbitration. *See Stolt-Nielsen*, 559 U.S. at 673 (explaining arbitrators need only engage in contract construction if arbitration agreement at issue does not reveal parties' agreement on issue of class arbitration). Even if, *arguendo*, some ambiguity exists that permits venture past the clear language of the arbitration agreement, the implications that arise from the terms of the contract and its interpretation also show that the parties did not agree to group arbitration.

#### 1. Silence On The Issue Of Class, Collective or Group Arbitration Means That Such Arbitration Is NOT Permitted.

In *Stolt-Nielsen*, the Supreme Court set forth guideposts for interpreting an arbitration agreement allegedly ambiguous on the issue of group arbitration. The groundwork for such interpretation, the Supreme Court explained, is the fundamental understanding that the "basic precept" of arbitration is that it is "a matter of consent, not coercion." *Id.* at 680-81. The Supreme Court stressed that the relevant inquiry is "whether the parties *agreed to authorize* class arbitration." *Id.* at 687 (emphasis in original). In so ruling, it articulated several "rules of fundamental importance." *Id.* at 680. First, the mere existence of an agreement to arbitrate does not and cannot support a finding that the parties implicitly agreed to authorize class arbitration. *Id.* at 685. Second, the lack of an express prohibition or exclusion of class arbitration similarly cannot support a finding that the parties agreed to authorize class arbitration. *Id.*

The Supreme Court explained in detail both rules of interpretation. With respect to the first rule, that "[a]n implicit agreement to authorize class-action arbitration . . . is not a term that

10

the arbitrator may infer solely from the fact of the parties' agreement to arbitrate," the Supreme Court explained that "class-arbitration changes the nature of arbitration" too much; a default presumption that class arbitration is intended anytime parties agree to arbitrate simply does not make sense. *Id.* at 685. In fact, the Court suggested that the opposite is true—the default rule is that the parties did <u>not</u> agree to group arbitration.

The Supreme Court explained that while "the commercial stakes of class-action arbitration are comparable to those of class-action litigation . . . the scope of judicial review is much more limited." *Id.* at 686-87. This in and of itself strongly suggests that defendant employers are unlikely to agree *implicitly* to class arbitration. Indeed, in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011), the Supreme Court explained:

> [C]lass arbitration greatly increases risks to defendants. . . . [T]he absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable.. . . Arbitration is poorly suited to the higher stakes of class litigation.. . . We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.

For these same reasons, the *Stolt-Nielsen* Court put its second black-and-white rule in place, holding that "the differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Stolt-Nielsen*, 662 U.S. at 687. Again in *Concepcion*, the Supreme Court reiterated this simple and unequivocal principle, that one cannot interpret a clause that is silent on the issue of group arbitration to authorize group arbitration. The *Concepcion* Court explained its holding in *Stolt-Nielsen* as follows: "[we] held

11

that the agreement at issue, which was *silent* on the question of class procedures, *could not be interpreted to allow them.*" *Concepcion*, 131 S. Ct. at 1750 (emphasis added); *see also American Exp. Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2308 (2013) ("*Stolt-Nielsen* . . . held that a party may not be compelled to submit to class arbitration absent an agreement to do so."). Federal courts across the country have applied *Stolt-Nielsen* in such a straightforward manner: where the parties' arbitration agreement is silent about group arbitration, group arbitration is not permitted. [6]

---

[6]    *See, e.g.*, *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 193 (2d Cir. 2011) ("*Stolt-Nielsen* states that parties cannot be forced to engage in a class arbitration *absent a contractual agreement to do so*."); *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 232 (3d Cir. 2012) ("Silence regarding class arbitration generally indicates a prohibition against class arbitration.") (citing *Stolt-Nielsen*); *Cent. W. Virginia Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 274 (4th Cir. 2011) (finding in *Stolt-Nielsen*, "Supreme Court held that the arbitration panel 'exceeded its powers' in finding that the parties' silence on the matter of class arbitration amounted to consent"); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013) (finding classwide arbitration inappropriate where arbitration clause "nowhere mentions it."); *Eshagh v. Terminix Int'l Co., L.P.*, 588 Fed. App'x. 703, 704 (9th Cir. 2014) (affirming district court's decision to strike class claims but compelling bilateral arbitration according to agreement, which did not contain terms regarding to class arbitration); *Del Webb Communities, Inc. v. Carlson*, No. 9:14-1877, 2017 WL 1050139, at *1 (D.S.C. Feb. 1, 2017) (concluding that arbitration agreement that was silent regarding class arbitration does not permit class arbitration); *NCR Corp. v. Jones*, No. 15-00444, 2016 WL 74424, at *5 (W.D.N.C. Jan. 6, 2016) ("[T]he exclusively bilateral terms [o]n the face of the contract weigh in favor of the Agreement only covering bilateral disputes."); *Alixpartners, LLP v. Brewington*, No. 14-14942, 2015 WL 8538089, at *5 (E.D. Mich. Dec. 10, 2015) (finding classwide arbitration not available because agreement was silent as to class arbitration); *Thomas v. Right Choice Staffing Grp., LLC*, No. 15-10055, 2015 WL 4078173, at *7 (E.D. Mich. July 6, 2015) (declining to permit classwide arbitration on FLSA claims where agreement at issue did not mention classwide arbitration); *Bird v. Turner*, No. 14-97, 2015 WL 5168575, at *9 (N.D.W. Va. Sept. 1, 2015), *appeal dismissed* (Dec. 2, 2015) ("[T]he arbitration agreement does not mention class arbitration. In fact, the arbitration agreement is put in terms of bilateral disputes . . . therefore . . . the parties did not consent to class arbitration but only to bilateral arbitration.").

12

In sum, an arbitrator may not impose nonconsensual group arbitration by construing silence in an arbitration agreement as implied consent to group arbitration. To the contrary, the default rule is that, where an agreement is silent as to class, collective or group arbitration, the parties have *not* agreed to arbitrate claims on anything other than an individual basis.

    2.    ***Finding That LCC Agreed To Group Arbitration Would Conflict With The Employee Agreement's Plain Language And LCC's Understanding Of It.***

Further undercutting any argument that the Employee Agreement anticipates group claims is that such an interpretation conflicts with the Employee Agreement's plain language. The language within the Employee Agreement reveals that the arbitration provision specifically contemplates bilateral arbitration. References to the two different sides of the contemplated arbitration proceeding are strictly written in the singular. For example, with respect to the costs and fees associated with arbitration, the Employee Agreement provides that "the losing party" shall bear the costs of arbitration, unless an arbitrator decides otherwise. (**Ex. B to Demand for Arbitration,** Mr. Torgerson's Executed Employment Agreement at § 5.4). The Employee Agreement also provides that "the prevailing party" is entitled to reimbursement for reasonable attorneys' fees and costs. (*Id.* at § 5.5). If the parties to the Employee Agreement had agreed to group arbitration, they would have used the plural "party or parties." The provisions as written anticipate bilateral dispute resolution with only one party on each side of the case. Arbitrator Healy agreed with this analysis when he concluded that permitting group arbitration does not square with the Employee Agreement's 49 references to a singular "Employee." **Ex. 1 to Ex. A,** Roseman Decl.

Second, LCC has never administered any class, collective or group claims under this arbitration provision. Moss Decl., ¶ 4, **Ex. B.** LCC has, at all times interpreted the arbitration

13

provision to prohibit the prosecution of anything other than individual complaints. *Id.* at ¶ 5. In addition to the *Khan* Claimants, other former colleagues of Mr. Torgerson have also interpreted the arbitration provision the same way, that is, prohibiting group or class arbitration. *Id.* at ¶ 3. Indeed, former LCC employees have filed no less than *six* separate arbitrations against LCC alleging that LCC improperly classified them as an exempt employee and failed to pay them overtime wages as allegedly required by the FLSA.[7] *Id.* Unlike Mr. Torgerson, however, these claimants only sought to represent themselves (on an individual basis) and did not seek to represent themselves *and all other similarly situated claimants*. The fact of these individual arbitrations establishes that LCC and its current and former employees did not have any sort of understanding that they could pursue claims on a class, collective or group basis.

## IV.   CONCLUSION

For all the foregoing reasons, the Arbitrator should issue a Final Clause Construction Award which holds that Mr. Torgerson's Employee Agreement does not authorize arbitrations of class, collective or group claims and directs that this matter shall proceed as an individual arbitration, resolving the claims of Mr. Torgerson only. The Arbitrator should further dismiss any individual who has filed a consent to join form from this arbitration, directing that they may refile their claims in accordance with the terms of their respective Employee Agreements.

---

[7]   *See, e.g.*, *David Batchelder v. LCC International, Inc.*, AAA No. 01-16-0001-948; *Keith Smith v. LCC International, Inc.*, AAA No. 01-16-0002-2907; *Tim Zweifel v. LCC International, Inc.*, AAA No. 01-16-0001-5502; and *Scott Alan Weller v. LCC International, Inc.*, AAA No. 01-16-0002-0575.

14

Dated: June 2, 2017                                              Respectfully submitted,

/s/ *James N. Boudreau*
James N. Boudreau, Esq.
Adam R. Roseman, Esq.
GREENBERG TRAURIG, LLP
2700 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
215.988.7833 (Telephone)
215.988.7801 (Telecopy)

*Attorneys for Respondent*

15