IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **RICHARD TORGERSON, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**LCC INTERNATIONAL, INC., et al.,**<br><br>Defendants. | Case No. 16-2495-DDC-TJJ |

## MEMORANDUM AND ORDER

Here we are again. More than two years after the court ordered the parties to arbitrate their dispute, defendant LCC International, Inc. ("LCC")[1] again applies for relief from the court's earlier decision compelling the parties to arbitrate the dispute whether their arbitration agreement authorizes collective arbitration. And, LCC again asks the court to vacate the arbitrator's decision that plaintiffs can assert Fair Labor Standards Act ("FLSA") collective action claims on behalf of themselves and all others similarly situated in an arbitration proceeding against LCC. LCC's newest filing—a Motion to Vacate Class Determination Award (Doc. 105)—doesn't provide any reason for the court to change its earlier rulings or vacate the arbitrator's decision. The court thus denies the Motion to Vacate Class Determination Award (Doc. 105). It explains why, below.

---

[1] LCC represents that, on December 13, 2016, it changed its corporate name to Tech Mahindra Network Service International, Inc. In their briefs, the parties continue to refer to this defendant as LCC. LCC explains that it does so because plaintiffs (except for Mr. Torgerson) never worked for LCC after its name change. Also, Mr. Torgerson filed his arbitration demand against LCC. The court adopts the parties' convention, and this Memorandum and Order thus refers to this defendant as LCC.

### I.     Factual Background

Plaintiffs Richard Torgerson, Robert Hall, Shelley Gordon, Bryon Hughes, and Moses Boye-Doe worked for LCC as Migration Analysts. On February 3, 2016, plaintiffs filed this lawsuit, on behalf of themselves and others similarly situated, alleging that LCC had violated the FLSA by improperly classifying all LCC employees working in a Migration Analyst position as employees exempt from the FLSA's overtime requirements. Plaintiffs' Complaint seeks to recover unpaid overtime compensation under the FLSA on behalf of themselves and other, similarly situated Migration Analysts.

As a condition of their employment with LCC, each plaintiff signed an Employee Agreement ("Agreement"). Among other things, the Agreement contains the following arbitration provision:

> 5.4     Arbitration: Any controversy or claim arising ou[t] of or relating to this Agreement, the breach or interpretation thereof or Employee's employment with LCC shall be settled by arbitration in Arlington, Virginia in accordance with the then prevailing rules of the American Arbitration Association, and judgment upon the award shall be final, conclusive and binding. All costs of arbitration shall be borne by the losing party, unless the arbitrators decide such costs should be allocated between the parties in particular proportions. Notwithstanding the foregoing, LCC shall be entitled to seek injunctive or other equitable relief pursuant to the provisions of Section 5.1 hereof in any federal or state court having jurisdiction.

Doc. 106-2 at 5.

Based on this Agreement, LCC filed a Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration. Doc. 28. On August 10, 2016, the court granted in part and denied in part defendants' Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration. Doc. 62. The court concluded that plaintiffs had signed an employment agreement that requires them to arbitrate their FLSA claims. *Id.* at 5. The court thus granted defendants' request to stay the case and compelled the parties to proceed to arbitration. *Id.* at 6.

Also, the court denied the portion of defendants' motion asking the court to decide whether the employment agreement permits collective arbitration because, the court ruled, the arbitrator must decide that issue. *Id.* at 8. And, for the same reasons, the court declined to decide plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA without prejudice to their right to present this request to an arbitrator. *Id.*

On January 17, 2017, Mr. Torgerson submitted a Demand for Arbitration to the American Arbitration Association ("AAA"). Doc. 106-4 at 2. Mr. Torgerson's demand sought to assert a collective action on behalf of himself and others similarly situated. *Id.*

On June 2, 2017, LCC filed a Motion for Clause Construction in the arbitration asking the arbitrator to dismiss the collective action claims. Doc. 106-7. On June 30, 2017, the arbitrator issued an Order on Threshold Matters and on Respondent's Motion for Clause Construction Award. Doc. 106-8. The arbitrator's Order determined that the arbitration provisions in plaintiffs' Agreement were valid and enforceable and that plaintiffs' FLSA claims fall within the scope of the Agreement's arbitration provisions. *Id.* at 7–8. Also, the arbitrator concluded that the Agreement authorizes plaintiffs to proceed on a collective basis. *Id.* at 11–13. Thus, the arbitrator dismissed LCC's Motion for a Final Clause Construction Award. *Id.* at 13.

In response to the arbitrator's decision, LCC filed a Petition to Vacate the Arbitrator's Final Clause Construction Award in the Eastern District of Virginia. Petition to Vacate, *LCC Int'l, Inc. v. Richard Torgerson*, No. 17-00860 (E.D. Va. July 28, 2017), ECF 1. After the parties entered a Joint Stipulation to transfer LCC's Petition to the District of Kansas, the Eastern District of Virginia transferred the action to our court.[2] On January 25, 2018, the court denied

---

[2] Upon transfer, the Clerk docketed the action as a new case, assigning it Case No. 17-2508-DDC-TJJ and noting that this case (Case No. 16-2495-DDC-TJJ) is a related case.

LCC's Petition to Vacate.  *LCC Int'l, Inc. v. Torgerson*, No. 17-2508-DDC-TJJ, 2018 WL 558141 (D. Kan. Jan. 25, 2018).  Among other things, the court held that the arbitrator had not exceeded his authority when he concluded that the parties' Agreement authorizes plaintiffs to assert FLSA claims on a collective basis.  *Id.* at *10–11.  The court thus denied LCC's Petition to Vacate.  *Id.*

Back in arbitration, LCC again moved the arbitrator to dismiss the collective action claims by filing a Motion to Decertify FLSA Collective Arbitration on May 1, 2019.  Doc. 106-10.  Among other things, LCC's motion argued that the Supreme Court's recent decision in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), required the arbitrator to decertify the collective arbitration.  *Id.* at 4, 12.

On July 8, 2019, the arbitrator denied LCC's Motion to Decertify Collective Arbitration.  Doc. 106-13.  In response to LCC's argument about *Lamps Plus*, the arbitrator explained that the Supreme Court held in that case:  "'Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.'"  *Id.* at 2 (quoting *Lamps Plus*, 139 S. Ct. at 1419).  The arbitrator explained that the *Lamps Plus* holding does not apply to the Agreement at issue in the arbitration because "*Varela*'s holding was explicitly limited to the question of whether 'an *ambiguous* agreement can provide the necessary "contractual basis" for compelling class arbitration.'"  *Id.* (quoting *Lamps Plus*, 139 S. Ct. at 1415) (emphasis added).  In contrast, the arbitrator found that the Agreement at issue here is "unambiguous."  *Id.*  And, based on the "unambiguous, express words of the parties' arbitration agreement," the arbitrator already had concluded that the parties had agreed to arbitrate their claims on a collective basis.  *Id.*  The arbitrator thus denied LCC's Motion to Decertify FLSA Collective Arbitration based on *Lamps Plus*.  *Id.* at 2–3.

4

Apparently undaunted, LCC applies to the court for relief again—this time from the arbitrator's latest ruling. LCC asks the court to vacate the arbitrator's Order denying LCC's Motion to Decertify FLSA Collective Arbitration. And it seeks an order requiring plaintiffs to arbitrate their FLSA claims on an individual basis. The court addresses LCC's arguments for vacatur, below.

## II. Legal Standard

The Federal Arbitration Act ("FAA") provides that courts may vacate an arbitrator's decision but "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). "That limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'" *Id.* (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Because "[i]f parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* (quoting *Hall St. Assocs.*, 552 U.S. at 588). And, "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

Consistent with this governing standard, our Circuit has explained that "[j]udicial review of arbitration panel decisions is extremely limited[.]" *Dominion Video Satellite, Inc. v. Echostar Satellite LLC*, 430 F.3d 1269, 1275 (10th Cir. 2005). The Circuit even has described it as "'among the narrowest known to law.'" *Id.* (quoting *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001)). The court must "afford maximum deference to the arbitrator's decision" because "[a]ny less deference would risk improperly substituting a judicial

5

determination for the arbitrator's decision that the parties bargained for." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1083, 1084 (10th Cir. 2017) (citations, internal quotation marks, and internal alternations omitted).

Section 10 of the FAA permits a federal district court to vacate an arbitration award in just four circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Outside those four reasons, the Tenth Circuit also has recognized a "handful of judicially created reasons that a district court may rely upon to vacate an arbitration award," including violation of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing. *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (citation and internal quotation marks omitted); *see also THI of N.M.*, 864 F.3d at 1084 (recognizing that "[t]o supplement these statutory grounds, [the Tenth Circuit has] recognized a judicially created exception to the rule that even an erroneous interpretation or application of law by an arbitrator is not reversible" (citing *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997))).

"Aside from these 'limited circumstances,' § 9 of the FAA requires courts to confirm arbitration awards." *THI of N.M.*, 864 F.3d at 1084 (quoting *Denver & Rio Grande*, 119 F.3d at

6

849). "Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Denver & Rio Grande*, 119 F.3d at 849 (first citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–38 (1987); then citing *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (further citation omitted)).

The party seeking to vacate an arbitrator's award "bears a heavy burden." *Oxford Health Plans*, 569 U.S. at 569. "'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" *Id.* (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000)). "Only if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn his determination." *Id.* (quoting *E. Associated Coal*, 531 U.S. at 62). The "sole question" for the court is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

### III.   Analysis

LCC's argues that the court should vacate the arbitrator's Order denying LCC's Motion to Decertify FLSA Collective Arbitration for two reasons.[3] First, LCC argues that the question

---

[3]   LCC asserts that the court has jurisdiction to decide LCC's Motion to Vacate under § 10 of the FAA. Doc. 105 at 2. As the court previously has explained, the Tenth Circuit has not decided whether a district court has jurisdiction to review an arbitrator's order holding that the parties' arbitration agreement allows a claimant to assert FLSA claims on a collective basis. *LCC Int'l, Inc. v. Torgerson*, No. 17-2508, 2018 WL 558141, at *6 (D. Kan. Jan. 25, 2018). But, in its previous Order, the court predicted that the Tenth Circuit would follow the majority view that jurisdiction exists for a district court to review an

7

whether the parties' Agreement authorizes collection arbitration is a "gateway question" for the court decide, not the arbitrator.  Doc. 106 at 7.  Thus, LCC contends, the court erred when it issued its Order more than two years ago compelling the parties to arbitrate that question.  Second, LCC contends, the arbitrator exceeded his authority by ruling that the parties' Agreement authorizes plaintiffs to arbitrate their FLSA claims on a collective basis.  *Id.* at 9–13.  The court addresses each argument, in turn, below.

### A. The Court Did Not Err By Holding That the Arbitrator Should Decide Whether the Agreement Authorizes Collective Arbitration.

More than two years ago, the court concluded that the parties' Agreement requires the arbitrator—not the court—to decide whether plaintiffs can arbitrate their FLSA claim on a collective basis.  Doc. 62 at 6–8.  LCC argues—as it has before—that the court got it wrong when it compelled the parties to arbitrate this issue.

Plaintiffs assert that LCC's argument is barred procedurally.  Plaintiffs accuse LCC of improperly filing a Motion to Reconsider the court's earlier ruling that doesn't comply with the court's local rule, D. Kan. Rule 7.3.  Plaintiffs also contend that LCC's argument is barred by the law of the case doctrine.  And, plaintiffs accuse defendants of filing this motion just to delay and impede the arbitration.  The court agrees with plaintiffs that LCC's latest filing suggests LCC is engaging in dilatory tactics.  The court already has ruled the issue whether the arbitrator should decide the collective arbitration question.  Nothing has changed.  Indeed, LCC provides no reason for the court to revisit the issue at this stage in the proceedings.  But, even if procedural rules or legal doctrine don't bar LCC from reasserting this argument, the court finds that it fails on its merits.

---

arbitrator's order determining that an arbitration agreement authorizes collective arbitration.  *Id.* at *7–8.  For the same reasons, the court concludes that it has jurisdiction here to decide LCC's Motion to Vacate.

LCC recognizes that the court's earlier decision relied on Judge Robinson's ruling in *Hedrick v. BNC National Bank*, 186 F. Supp. 3d 1189 (D. Kan. May 16, 2016).  In *Hedrick*, Judge Robinson held that the arbitrator must determine whether plaintiff could assert his FLSA claim on a collective basis in arbitration.  *Id.* at 1195–96.  Judge Robinson reached this conclusion because the parties' agreement incorporated the American Arbitration Association's ("AAA") National Rules for the Resolution of Employment Disputes which confer on the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  *Id.* at 1196 (internal quotation marks omitted).  Thus, Judge Robinson explained, "pursuant to the arbitration clause, the arbitrator must determine whether class arbitration falls within the scope of the clause."  *Id.*  So, "the parties' incorporation of the Rules into the arbitration clause" provided "clear and unmistakable delegation of questions of arbitrability to the arbitrator" including "the question of whether the arbitration clause allows for class arbitration."  *Id.* (internal quotation marks omitted).

Applying *Hedrick* to this case's facts, the court's earlier decision noted that the Agreement at issue here, like *Hedrick*'s arbitration agreement, calls for binding arbitration performed "'in accordance with the then prevailing rules of the American Arbitration Association.'"  Doc. 62 at 8 (quoting the parties' Agreement); *see also* Doc. 106-2 at 5.  Thus, the court found that the parties' Agreement "clearly and unmistakably requires the arbitrator to decide questions of arbitrability."  Doc. 62 at 8 (citations and internal quotation marks omitted).  So, the court concluded that the arbitrator must decide whether plaintiffs can assert their FLSA claims on a collective basis.

LCC concedes that the Tenth Circuit recently has held that "incorporation of the AAA Rules [in an arbitration agreement] provides clear and unmistakable evidence that the parties intended to delegate . . . all issues of arbitrability to the arbitrator" including whether the agreement authorizes class arbitration. *DISH Network LLC v. Ray*, 900 F.3d 1240, 1247–48 (10th Cir. 2018). Thus, under existing Tenth Circuit and District of Kansas case law, the court correctly interpreted the parties' Agreement as requiring the arbitrator to decide whether plaintiffs may assert collective claims in the arbitration.[4]

But, LCC's Motion to Vacate argues that both *DISH Network* and *Hedrick* were wrongly decided. Doc. 106 at 8. And, LCC contends, the court shouldn't follow their holdings because other Circuit Courts of Appeal have determined that merely referencing or incorporating the AAA Rules in an arbitration agreement is not clear and unmistakable evidence of an intent to delegate questions of arbitrability to the arbitrator. *Id.* LCC recognizes, though, that the Supreme Court has not yet decided this issue. *Id.* And thus, the Tenth Circuit's decision in *DISH Network* binds this court. *Id.*; *see also United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990) (explaining that, when no Supreme Court decision establishes controlling precedent, "[a] district court must follow the precedent of this circuit regardless of its views [about] the advantages of" precedent from elsewhere). For this reason, the court declines to apply the law from other Circuits. Instead, as it must, the court follows the Tenth Circuit's holding in *DISH Network*. And, under that guidance, the court correctly determined that the parties' incorporation of the AAA Rules in their Agreement provides clear and unmistakable

---

[4] Also, the court observes that—in addition to incorporating the AAA Rules—the parties' Agreement broadly delegates to arbitration "[a]ny controversy or claim arising ou[t] of or relating to this Agreement, the breach *or interpretation thereof* or Employee's employment with LCC." Doc. 106-2 at 5 (emphasis added). Thus, the plain language of the arbitration clause requires the parties to submit to arbitration any controversy "relating to . . . interpretation" of the Agreement. *Id.*

10

evidence that the parties intended to delegate the question whether plaintiffs may assert FLSA collective action claims to the arbitrator.

Also, LCC asserts that the court shouldn't follow *DISH Network* here because that case differs from the facts of this case. Here, LCC contends, both parties argued—in their briefing on a motion to compel arbitration early in the case's inception—that the court should decide the question whether the Agreement allows collective arbitration. Doc. 62 at 6 (acknowledging that both parties ask the court to decide the arbitrability question). Thus, LCC contends, the parties' agreement about who should decide the arbitration question shows clearly and unmistakably that the parties didn't intend to delegate the question to the arbitrator. And, LCC contends, the court erred by finding *sua sponte* that the arbitrability question belongs to the arbitrator—not the court. But, LCC cites no authority requiring the court to disregard the law governing the interpretation of arbitration agreements simply because the parties want the court to interpret the agreement in a different fashion. The court thus rejects LCC's argument that *DISH Network* doesn't apply here.

For all these reasons, the court again rejects LCC's argument that the court erred when it held that the parties' Agreement requires the arbitrator to decide whether the Agreement allows plaintiffs to assert FLSA claims on a collective basis.

### B. The Arbitrator Never Exceeded His Authority By Ruling that the Parties' Agreement Allows Plaintiffs to Arbitrate Their FLSA Claims on a Collective Basis.

Next, LCC argues that the arbitrator exceeded his authority by ruling that the parties' Agreement authorizes plaintiffs to arbitrate their FLSA claims on a collective basis. Specifically, LCC contends that the arbitrator's decision contravenes the Supreme Court's holding in *Lamps Plus*. In *Lamps Plus*, the Supreme Court considered "whether the FAA bars an

order requiring class arbitration when an agreement is . . . 'ambiguous' about the availability of such an arbitration." *Lamps Plus*, 139 S. Ct. at 1412. The Court held that it does. *Id.* at 1416–17.

To reach this conclusion, the Court reasoned that "ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration.'" *Id.* at 1416 (quoting *AT&T Mobility LCC v. Concepcion*, 563 U.S. 333, 348 (2011)). The Court noted that "parties are free to authorize arbitrators to resolve such questions," but the Court refused to "conclude that they have done so based on 'silence or ambiguity' in their agreement, because 'doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.'" *Id.* at 1417 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995)). Thus, the Court held: "Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself." *Id.*

When filing its Motion to Decertify FLSA Collective Arbitration, LCC argued to the arbitrator that *Lamps Plus* mandates decertification of the collective action. Doc. 106-13 at 2. The arbitrator disagreed. *Id.* He explained that *Lamps Plus* holds that "'Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.'" *Id.* (quoting *Lamps Plus*, 139 S. Ct. at 1419). The arbitrator described *Lamps Plus*'s holding as "explicitly limited to the question of whether 'an *ambiguous* agreement can provide the necessary "contractual basis" for compelling class arbitration.'" *Id.* (quoting *Lamps Plus*, 139 S. Ct. at 1415). And, he concluded that *Lamps Plus*'s limitation makes that case different from the facts here. He explained: "[B]y contrast, the Arbitrator ruled [in its June 30, 2017 Order] that arbitration may proceed on a collective basis based on the *unambiguous*, express words of the

12

parties' arbitration agreement." *Id.* (emphasis added).  Because the Agreement at issue here is not ambiguous, the arbitrator concluded, *Lamps Plus* "has no bearing on whether this matter may proceed on a collective basis." *Id.* at 2–3.

LCC argues that the arbitrator exceeded his authority when he reached this conclusion. LCC contends that the arbitrator violated *Lamps Plus* by determining that the express words of the parties' Agreement unambiguously provide for collective arbitration.  LCC argues, the Agreement contains "virtually identical, broad language" to the arbitration provision discussed in *Lamps Plus* which, the Supreme Court held, "did not provide the requisite affirmative contractual basis to conclude the parties agreed to collective arbitration." Doc. 106 at 11.[5]  Thus, LCC asserts, the court must vacate the arbitrator's decision because it "'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract.'" *Id.* (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)).  The court disagrees.

The Supreme Court has made it clear:  the question under the FAA's § 10(a)(4) is "whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided the issue." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 694 (2010).  Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly." *Oxford Health Plans*, 569 U.S. at 572.  Under this provision, "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Stolt-Nielsen*, 559 U.S. at 671.  The court may

---

[5] The Agreement in *Lamps Plus* recited:  "[T]he parties agree that any and all disputes, claims or controversies arising out of or relating to[ ] the employment relationship between the parties[ ] shall be resolved by final and binding arbitration." *Lamps Plus*, 139 S. Ct. at 1428 (Kagan, J., dissenting).  The Agreement here provides:  "Any controversy or claim arising ou[t] of or relating to this Agreement, the breach or interpretation thereof or Employee's employment with LCC shall be settled by arbitration . . . ." Doc. 106-2 at 5.

13

vacate the award "[o]nly if the arbitrator acts outside the scope of his contractually delegated authority—issuing an award that simply reflects his own notions of economic justice rather than drawing its essence from the contract . . . ." *Oxford Health Plans*, 569 U.S. at 569 (citations, alterations, and internal quotation marks omitted). Instead, "the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

Here, LCC argues that the arbitrator did not correctly interpret the parties' contract when he determined that its express words are unambiguous and allowed the arbitration to proceed on a collective basis. But, as the Supreme Court has explained, an arbitrator's error when interpreting a contract—even when it amounts to a serious error—doesn't provide sufficient reason for a court to vacate an arbitration award. *Stolt-Nielsen*, 559 U.S. at 671. The Supreme Court has instructed that, when an arbitrator is "even arguably construing or applying the contract," his decision must stand "regardless of a court's view of its (de)merits." *Oxford Health Plans*, 569 U.S. at 569 (citations and internal quotation marks omitted). "The arbitrator's construction holds, however good, bad, or ugly." *Id.* at 573.

Indeed, LCC concedes that the arbitrator found the parties' Agreement "authorized collective arbitration 'based on [the words of the agreement] themselves.'" Doc. 108 at 6 (first quoting Doc. 106-8 at 13 (Arbitrator's June 30, 2017 Order); then citing Doc. 106-13 (Arbitrator's July 8, 2019 Order)). LCC doesn't care for that conclusion, one the arbitrator made after interpreting the language of the agreement. And, it argues, the arbitrator's conclusion has no contractual basis. But, these arguments simply attack the arbitrator's performance of his contractually-delegated duty of interpreting the parties' Agreement. They don't begin to show that the arbitrator "strayed from his delegated task." *Oxford Health Plans*, 569 U.S. at 572.

14

To the contrary, the arbitrator's decision says that he has interpreted the contract to allow collective arbitration based on its express words. Doc. 106-8 at 11–13; Doc. 106-13 at 1–2. Thus, the court has no reason to vacate his decision. *See Oxford Health Plans*, 569 U.S. at 571–72 (explaining that § 10(a)(4) bars a court from vacating an arbitrator's decision when the arbitrator "did construe the contract (focusing, per usual, on its language), and did find an agreement to permit class arbitration" even if he "performed that task poorly"); *see also CEEG (Shanghai) Solar Sci. & Tech. Co., Ltd. v. LUMOS LLC*, 829 F.3d 1201, 1206 (10th Cir. 2016) (explaining that the court is "not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract" (citation and internal quotation marks omitted)).

Applying a standard of review that "is among the narrowest known to the law," *CEEG (Shanghai) Solar*, 829 F.3d at 1206, the court concludes that the arbitrator did not exceed the scope of his delegated authority when he interpreted the express words of the parties' Agreement to allow collective arbitration. The court thus denies LCC's request that the court vacate the arbitrator's decision.

## IV.  Conclusion

For reasons discussed, the court denies LCC's Motion to Vacate (Doc. 105). LCC has failed to shoulder its heavy burden of establishing that the arbitrator exceeded his authority by ruling that the parties' Agreement authorizes plaintiffs to arbitrate their FLSA claims on a collective basis. The court thus rejects LCC's request for an order vacating the arbitrator's Order under the highly deferential standard of 9 U.S.C. § 10(a)(4).

**IT IS THEREFORE ORDERED THAT** defendant LCC International, Inc.'s Motion to Vacate (Doc. 105) is denied.

**IT IS SO ORDERED.**

**Dated this 9th day of January, 2020, at Kansas City, Kansas.**

                                            **s/ Daniel D. Crabtree**
                                            **Daniel D. Crabtree**
                                            **United States District Judge**