IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **RICHARD TORGERSON, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**LCC INTERNATIONAL, INC., et al.,**<br><br>Defendants. | Case No. 16-2495-DDC-TJJ |

# **MEMORANDUM AND ORDER**

More than six years ago, plaintiffs filed this Fair Labor Standards Act ("FLSA") collective action on behalf of themselves and all others similarly situated against defendant LCC International, Inc. ("LCC") and four individuals.[1] The court compelled the parties to arbitrate the dispute, and the arbitrator since has issued three awards: (1) an Interim Award that (a) held defendant LCC improperly classified plaintiffs as exempt under the FLSA, (b) concluded that plaintiffs are entitled to actual and liquidated damages, and (c) ordered the parties to calculate the damages each plaintiff is entitled to recover (Doc. 136-1); (2) a Second Interim Award that awarded to each individual plaintiff a specific damage award for unpaid overtime compensation and liquated damages (Doc. 136-2); and (3) a Final Award that awarded plaintiffs $788,410 in attorneys' fees and $13,208.50 in expenses (Doc. 136-3).

---

[1] LCC represents that, on December 13, 2016, it changed its corporate name to Tech Mahindra Network Services International, Inc. Doc. 144 at 1. The parties' briefs continue to refer to this defendant as LCC. LCC explains that it does so because plaintiffs (except for Mr. Torgerson) never worked for LCC after its name change. *Id.* Also, Mr. Torgerson filed his arbitration demand against LCC. *Id.* The court adopts the parties' convention, and this Memorandum and Order thus refers to this defendant as LCC.

Now, in our court, plaintiffs have filed an Application for Order Confirming Arbitration Award (Doc. 136). Defendant LCC opposes that motion (Doc. 146), and has filed a Cross-Motion to Vacate Arbitration Award (Doc. 144). Both motions are fully briefed, and the court has considered the parties' arguments. For reasons explained, the court grants plaintiffs' Application for Order Confirming the Arbitration Award (Doc. 136) and denies defendant LCC's Cross-Motion to Vacate Arbitration Award (Doc. 144).

## I.     Factual Background

Plaintiffs Richard Torgerson, Robert Hall, Shelley Gordon, Bryon Hughes, and Moses Boye-Doe worked for LCC as Migration Analysts. Doc. 1 at 1–2 (Compl. ¶¶ 2–6). On February 3, 2016, plaintiffs filed this lawsuit, on behalf of themselves and others similarly situated, alleging that LCC had violated the FLSA by improperly classifying all LCC employees working in a Migration Analyst position as employees exempt from the FLSA's overtime requirements. *See generally id.* Plaintiffs' Complaint seeks to recover unpaid overtime compensation under the FLSA on behalf of themselves and other, similarly situated Migration Analysts. *Id.* at 1 (Compl. ¶ 1).

As a condition of their employment with LCC, each plaintiff signed an Employee Agreement ("Agreement"). *See, e.g.*, Doc. 106-2. Among other things, the Agreement contains the following arbitration provision:

> 5.4     <u>Arbitration</u>: Any controversy or claim arising ou[t] of or relating to this Agreement, the breach or interpretation thereof or Employee's employment with LCC shall be settled by arbitration in Arlington, Virginia in accordance with the then prevailing rules of the American Arbitration Association, and judgment upon the award shall be final, conclusive and binding. All costs of arbitration shall be borne by the losing party, unless the arbitrators decide such costs should be allocated between the parties in particular proportions. Notwithstanding the foregoing, LCC shall be entitled to seek injunctive or other equitable relief pursuant to the provisions of Section 5.1 hereof in any federal or state court having jurisdiction.

*Id.* at 5.

Based on this Agreement, LCC filed a Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration. Doc. 28. On August 10, 2016, the court granted in part and denied in part LCC's Motion to Dismiss or, in the Alternative, to Stay Proceedings and Compel Arbitration. Doc. 62. The court concluded that plaintiffs had signed an employment agreement requiring them to arbitrate their FLSA claims. *Id.* at 5. The court thus granted LCC's request to stay the case and compelled the parties to proceed to arbitration. *Id.* at 6. Also, the court denied the portion of LCC's motion asking the court to decide whether the Agreement permits collective arbitration because, the court ruled, the arbitrator must decide that issue. *Id.* at 8. And, for the same reasons, the court declined to decide plaintiffs' Motion for Conditional Certification of Class Claims Under § 216(b) of the FLSA without prejudice to their right to present this request to an arbitrator. *Id.*

On January 17, 2017, Mr. Torgerson submitted a Demand for Arbitration to the American Arbitration Association ("AAA"). Doc. 106-4 at 2. Mr. Torgerson's demand sought to assert a collective action on behalf of himself and others similarly situated against LCC. *Id.*

Twice during the arbitration proceedings, LCC came back to this court seeking relief from the arbitrator's decisions. First, in 2017, LCC filed a Petition to Vacate the Arbitrator's Final Clause Construction Award. Petition to Vacate, *LCC Int'l, Inc. v. Richard Torgerson*, No. 17-2508-DDC-TJJ (D. Kan. July 28, 2017), ECF 1.[2] Specifically, LCC's Petition asked the court

---

[2] LCC first filed the Petition to Vacate in the Eastern District of Virginia. *See* Petition to Vacate, *LCC Int'l, Inc. v. Torgerson*, No. 17-00860 (E.D. Va. July 28, 2017), ECF 1. After the parties entered a Joint Stipulation to transfer LCC's Petition to the District of Kansas, the Eastern District of Virginia transferred the action to our court. Upon transfer, the Clerk docketed the action as a new case, assigning it Case No. 17-2508-DDC-TJJ and noting that this case (Case No. 16-2495-DDC-TJJ) is a related case.

to vacate the arbitrator's Order denying LCC's Motion to Dismiss plaintiffs' collective action claims. *Id.* at 1. Also, it asked the court to order that plaintiff Richard Torgerson must pursue his FLSA claim in arbitration on an individual basis. *Id.*

On January 25, 2018, the court denied LCC's Petition to Vacate. *LCC Int'l, Inc. v. Torgerson*, No. 17-2508-DDC-TJJ, 2018 WL 558141 (D. Kan. Jan. 25, 2018), ECF No. 16. Among other things, the court held that the arbitrator had not exceeded his authority when he concluded that the parties' Agreement authorizes plaintiffs to assert FLSA claims on a collective basis. *Id.* at *10–11. The court thus denied LCC's Petition to Vacate. *Id.* at *11.

Second, in 2019, LCC filed in this court a Motion to Vacate the arbitrator's Order denying LCC's Motion to Decertify FLSA Collective Arbitration. Doc. 105. Again, LCC asked the court to vacate the arbitrator's decision allowing plaintiffs to proceed with their FLSA claims on a collective basis. *Id.* at 1. And, once again, LCC asked the court to issue an order requiring plaintiffs to arbitrate their FLSA claims individually. *Id.* Specifically, LCC argued that the Supreme Court's recent decision in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019), required the arbitrator to decertify the collective arbitration. Doc. 105 at 3–4. The court disagreed with LCC. On January 9, 2020, this court denied LCC's Motion to Vacate. Doc. 110. The court's Order held that *Lamps Plus* didn't require the court to vacate the arbitrator's decision. *Id.* at 11–15. Instead, the court held, LCC had failed to shoulder its "heavy burden" of establishing that the arbitrator exceeded his authority by ruling that the parties' Agreement authorizes plaintiffs to arbitrate their FLSA claims on a collective basis. *Id.* at 15. As a consequence, the court denied LCC's request for an order vacating the arbitrator's Order. *Id.*

LCC appealed the court's Order denying their Motion to Vacate. Doc. 112. But the Tenth Circuit dismissed LCC's appeal because it lacked a basis to exercise jurisdiction over that kind of interlocutory appeal. Doc. 117.

Finally, on June 22–24, 2021, the parties arbitrated their dispute at an arbitration hearing held in Kansas City, Kansas. Doc. 136-1 at 1. Afterwards, the arbitrator issued an Interim Award. *See generally id.* The Interim Award: (1) denied LCC's post-hearing motion to decertify the arbitration as a collective, opt-in arbitration, *id.* at 7–9, (2) held that plaintiffs are not employees exempt from the FLSA overtime requirements, *id.* at 9–12, (3) held that the FLSA's three-year statute of limitations applies to plaintiffs' claims because plaintiffs had shown that LCC's violations were willful, *id.* at 12–13, (4) held that plaintiffs are entitled to liquated damages and post-judgment interest, *id.* at 13–16, and (5) ordered the parties to calculate and submit to the arbitrator the damages that each individual plaintiff is entitled to recover, *id.* at 17.

On March 7, 2022, the arbitrator issued a Second Interim Award that awarded damages to the individual plaintiffs in the following amounts:

| Name | Damage Award |
|---|---|
| Abdulmohsin, Saif | $11,706.99 |
| Agee, Darrell | $17,474.71 |
| Al Badrawi, Mohammad | $2,135.42 |
| Baker, Scott | $17,123.18 |
| Boye-Doe, Moses | $11,619.11 |
| Collins, Terri | $431.99 |
| Gordon, Shelly | $9,036.18 |
| Hadeed, Saud | $9,768.34 |
| Hall, Robert | $19,886.37 |
| Hughes, Byron | $14,358.99 |
| Molt, Russ | $6,199.20 |
| Navejar, Mary | $8,199.18 |
| Oliphant, Mary | $5,003.70 |
| Oliver, Scott | $12,111.20 |
| Sang, Mark | $8,065.59 |
| Snow, Gordon | $12,177.53 |
| Stigler, Chaquata | $10,590.79 |

| Torgerson, Richard | $23,609.74 |
| --- | --- |
| Villegas, Dishire | $4,622.79 |
| Winslow, Christopher | $11,437.08 |
| Ernst, Jason | $9,698.39 |
| Glaves, John | $18,483.48 |
| Jester, Darrell | $2,066.76 |
| Kelley, Joyce | $18,779.25 |
| Kimutai, Ibrahim | $23,885.42 |
| Richardson, Lonell | $23,722.34 |
| Shafer, Jeffrey | $12,286.82 |
| Tooley-Shigley, Marilyn | $6,523.71 |
| Whitfield, Mark | $2,820.40 |

Doc. 136-2 at 2, 6.[3]

And then, on July 18, 2022, the arbitrator issued a Final Award that awarded plaintiffs $788,410 in attorneys' fees and $13,208.50 in expenses. Doc. 136-3 at 3.

Plaintiffs now have applied to the court for an order confirming the arbitrator's Interim Award, Second Interim Award, and Final Award. Doc. 136. LCC opposes that motion (Doc. 145). And LCC has filed a Cross-Motion to Vacate Arbitration Award (Doc. 144). The court addresses those motions, below. But first, the court recites the legal standard governing motions to confirm and motions to vacate arbitration awards.

## II. Legal Standard

Plaintiffs move to confirm the arbitration awards under Section 9 of the Federal Arbitration Act (FAA). Doc. 136 at 1 (citing 9 U.S.C. § 9). Section 9 of the FAA provides in pertinent part:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

---

[3] Plaintiffs correctly calculate the total amount of these individuals awards as $333,824.65. Doc. 136 at 3.

6

9 U.S.C. § 9 (emphasis added).

The Tenth Circuit has instructed that "'judicial review of an arbitration award is very narrowly limited.'" *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (quoting *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986)). In fact, the standard of review for arbitration awards "is 'among the narrowest known to the law[.]'" *Air Methods Corp. v. OPEIU*, 737 F.3d 660, 665 (10th Cir. 2013) (quoting *LB & B Assocs., Inc. v. Int'l Bhd. of Elec. Workers, Loc. No. 113*, 461 F.3d 1195, 1197 (10th Cir. 2006)). This standard of review comports with the "primary purpose behind arbitration agreements"—avoiding "the expense and delay of court proceedings[.]" *ARW Expl. Corp.*, 45 F.3d at 1463 (quoting *Turley*, 808 F.2d at 42); *see also Air Methods Corp.*, 737 F.3d at 665 (explaining that courts should apply a deferential standard to an arbitrator's award "since the parties have contracted for an arbitrator to resolve their disputes, not a court" (citation and internal quotation marks omitted)).

The Supreme Court has explained that courts may vacate an arbitrator's decision under the FAA but "'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). "That limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'" *Id.* (quoting *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Because if "parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* (quoting *Hall St. Assocs.*, 552 U.S. at 588). And "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).

7

Consistent with this governing standard, our Circuit has explained that "[j]udicial review of arbitration panel decisions is extremely limited[.]" *Dominion Video Satellite, Inc. v. Echostar Satellite LLC*, 430 F.3d 1269, 1275 (10th Cir. 2005). The court must "afford maximum deference to the arbitrators' decisions" because "[a]ny less deference would risk improperly substituting a judicial determination for the arbitrator's decision that the parties bargained for." *THI of N.M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1083–84 (10th Cir. 2017) (citations, internal quotation marks, and internal alterations omitted).

Section 10 of the FAA permits a federal district court to vacate an arbitration award in just four circumstances:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Outside those four reasons, the Tenth Circuit also has recognized a "handful of judicially created reasons that a district [court] may rely upon to vacate an arbitration award," including violation of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing. *Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001) (citation and internal quotation marks omitted); *see also THI of N.M.*, 864 F.3d at 1084 ("To supplement these statutory grounds, [the Tenth Circuit has] recognized a judicially created exception to the rule that even an erroneous interpretation or application of law by an arbitrator is not reversible."

8

(citing *Denver & Rio Grande W. R.R. Co. v. Union Pac. R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997))).

"Aside from these 'limited circumstances,' § 9 of the FAA requires courts to confirm arbitration awards." *THI of N.M.*, 864 F.3d at 1084 (quoting *Denver & Rio Grande*, 119 F.3d at 849). "Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy." *Denver & Rio Grande*, 119 F.3d at 849 (first citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36–38 (1987); then citing *ARW Expl.*, 45 F.3d at 1463 (further citation omitted)).

The party seeking to vacate an arbitrator's award "bears a heavy burden." *Oxford Health Plans*, 569 U.S. at 569. "'It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.'" *Id.* (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000)). "Only if 'the arbitrator act[s] outside the scope of his contractually delegated authority'—issuing an award that 'simply reflect[s] [his] own notions of [economic] justice' rather than 'draw[ing] its essence from the contract'—may a court overturn his determination." *Id.* (quoting *E. Associated Coal*, 531 U.S. at 62). The "sole question" for a court to decide is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*

### III. Analysis

The court first addresses LCC's Cross-Motion to Vacate the Arbitration Award. Doc. 144. It asks the court to vacate the arbitrator's awards under Section 10(a)(4) of the FAA. *Id.* at 1. As explained, the court isn't persuaded by LCC's arguments that the arbitrator "exceeded [his] powers or so imperfectly executed them" such that the court should vacate the arbitration awards under Section 10 of the FAA, 9 U.S.C. § 10(a)(4). Thus, the court denies LCC's request that the court vacate the arbitrator's awards.

Next, the court addresses plaintiffs' Motion to Confirm the arbitrator's awards. And for reasons explained below, the court grants that motion and confirms the arbitrator's Interim Award, Second Interim Award, and Final Award under Section 9 of the FAA, 9 U.S.C. § 9. The court explains its reasoning, below.

#### A. Motion to Vacate Arbitration Award

Defendant LCC argues that the court should vacate the arbitrator's awards for three reasons. The court addresses each of them, below.

*First*, LCC asserts that this court erred in its previous Orders by holding that the question whether the parties' arbitration agreement authorizes collective arbitration is one for the arbitrator to decide. LCC argues that the court was wrong to apply the Tenth Circuit's holding in *DISH Network LLC v. Ray*, 900 F.3d 1240, 1247–48 (10th Cir. 2018) to the arbitration agreement at issue here. As the court already has explained, our Circuit held in *DISH Network* that "incorporation of the AAA Rules [in an arbitration agreement] provides clear and unmistakable evidence that the parties intended to delegate . . . *all* issues of arbitrability to the arbitrator" including whether the agreement authorizes class or collective arbitration. *Id.* at 1247–48. Because the parties' arbitration agreement here requires arbitration "in accordance

10

with the then prevailing rules of the American Arbitration Association," Doc. 106-2 at 5, the court concluded that the parties' incorporation of the AAA Rules in their Agreement provides clear and unmistakable evidence that the parties intended to delegate the question whether plaintiffs may assert FLSA collective action claims to the arbitrator, Doc. 110 at 10–11.

To support its argument that the court erred by applying *DISH Network* to the facts here, LCC rehashes arguments that it previously has asserted and the court explicitly has rejected.[4] Also, LCC urges the court to apply non-binding, out-of-Circuit case law to the question. None of LCC's arguments convince the court that it erred in its previous Orders by holding that the parties' Agreement requires the arbitrator to decide whether the Agreement allows plaintiffs to assert FLSA claims on a collective basis. The arbitrator didn't exceed his powers when he decided this question. As a consequence, the court can't vacate the arbitration orders under 9 U.S.C. § 10(a)(4).

*Second*, LCC argues that the arbitrator exceeded his authority under Section 10(a)(4) of the FAA by ruling that the arbitration could proceed as a collective action. LCC contends that this ruling contravenes the Supreme Court's decision in *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2010). Again, LCC supports its argument by rehashing arguments it previously has asserted and this court already has rejected. Also, it urges the court to follow non-binding, out-

---

[4] Plaintiffs accuse LCC of having a "poor loser problem." Doc. 147 at 3–4 n.4. They argue that LCC's "continued and frivolous challenges" to the arbitrator's decisions (which includes an appeal of a non-appealable interlocutory order) is contrary to both: (1) Fed. R. Civ. P. 1, which requires the court and the parties to construe, administer, and employ the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding[,]" and (2) the purpose of the FAA which is to "facilitate streamlined proceedings" through the "informality" of arbitration, thereby "reducing the cost and increasing the speed of dispute resolution[,]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–45 (2011). The court is inclined to agree. LCC has established many roadblocks for plaintiffs in this case's eight-year life span. Plaintiffs cite cases where courts have imposed sanctions on parties who have made unsupported challenges to arbitration decisions. But plaintiffs don't ask the court to award sanctions against LCC. And the court finds no reason to do so now. But LCC shouldn't harbor any doubts about the court's view of LCC's litigation tactics in this lawsuit. They're not impressive. They have served only to delay the arbitration and frustrate plaintiffs' prosecution of their claims.

of-Circuit case law. LCC's counsel is sophisticated and experienced enough to know better. The court isn't persuaded by LCC's regurgitated assertions.

The court thoroughly addressed LCC's second argument in an Order issued more than two years ago. Doc. 110 at 11–15. The court's Order explained that the arbitrator had "described *Lamps Plus*'s holding as 'explicitly limited to the question of whether "an *ambiguous* agreement can provide the necessary contractual basis for compelling class arbitration."'" *Id.* at 12 (quoting Doc. 106-13 at 2 (Arbitrator's July 8, 2019 Order) (quoting *Lamps Plus*, 139 S. Ct. at 1415)). The arbitrator explained that *Lamp Plus* differed from the facts here because *Lamps Plus* involved an *ambiguous* agreement. The parties' arbitration agreement here is *unambiguous*. *Id.* at 12–13; *see also* Doc. 106-13 at 2 (Arbitrator's July 8, 2019 Order) ("[B]y contrast, the Arbitrator ruled [in its June 30, 2017 Order] that arbitration may proceed on a collective basis based on the *unambiguous*, express words of the parties' arbitration agreement." (emphasis added)).

When asking this court to vacate the arbitrator's decision because, LCC contended, the arbitrator had violated *Lamps Plus* by determining that the express words of the parties' Agreement unambiguously provides for collective arbitration, the court explained that "the question under the FAA's § 10(a)(4) is 'whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided the issue*.'" Doc. 110 at 13 (emphasis added) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 694 (2010)). "Instead, 'the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.'" *Id.* at 14 (quoting *Oxford Health Plans*, 569 U.S. at 569). The court explained that LCC's arguments simply attacked the arbitrator's performance of

12

his contractually-delegated duty of interpreting the parties' Agreement but failed to show that he "'strayed from his delegated task.'" *Id.* (quoting *Oxford Health Plans*, 569 U.S. at 572). Thus, the court concluded that no reason existed to vacate the arbitrator's decision. *Id.* at 15.

This analysis still applies to LCC's current argument. As plaintiffs rightly assert, "nothing has changed since this [c]ourt issued" its previous Order. Doc. 147 at 7. And an "alleged error in the interpretation of a contract is not sufficient to allow" the court to vacate the award. *Id.* (citing *Stolt-Nielsen S.A.*, 559 U.S. at 671). Thus, LCC fails to show that the court should vacate the arbitrator's orders under Section 10(a)(4) of the FAA.

*Third*, LCC argues that the arbitrator erred and manifestly disregarded the law by holding that the FLSA's three-year statute of limitations applies to plaintiffs' FLSA claims. The arbitrator correctly explained that the FLSA provides for "an expanded three-year statute of limitations if the claim arises out of a 'willful violation.'" Doc. 136-1 at 12 (quoting 29 U.S.C. § 255(a)). And, he correctly explained, plaintiffs must shoulder the burden to prove a willful violation by showing "that LCC 'either *knew or showed reckless disregard for* the matter of whether its conduct was prohibited by the [FLSA.]'" *Id.* (first citing *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011); then quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); and then citing *Desmond*, 630 F.3d at 357). Then, the arbitrator determined that LCC's violations were willful because "no evidence was presented regarding how or why [LCC] determined that [plaintiffs] were exempt" and "[n]o evidence was presented that [LCC] sought an opinion from the DOL or consulted with an accountant, attorney, or anyone else in establishing their overtime practices." *Id.* at 12–13. The arbitrator noted that the "lack of any proffered evidence by [LCC] on this issue is by itself suggestive of willful conduct." *Id.* at 13.

13

LCC argues that this portion of the arbitrator's award erroneously flipped the burden of proof by requiring LCC to come forward with evidence showing a lack of willfulness. By doing so, LCC contends, the arbitrator manifestly disregarded the law which—as the arbitrator recognized—places the burden of proof to show willfulness on FLSA plaintiffs. But LCC's reading of the arbitrator's award ignores that the arbitrator found that by "2015, LCC was unquestionably aware of its potential misclassification of its Migration Analysts and Senior Migration Analysts, due [to a] DOL investigation report." *Id.* at 13. Plaintiffs had offered the DOL investigation report into evidence, and LCC moved to exclude it. *Id.* at 13 n.3. The court denied LCC's motion to exclude and admitted the DOL investigation report as evidence proving that "LCC was on notice of its potential FLSA violations." *Id.* Thus, plaintiffs shouldered their burden to come forward with evidence showing a willful FLSA violation by offering the DOL investigation report into evidence.[5] And, the arbitrator found, LCC failed to rebut that evidence by coming forward with their own evidence showing a lack of willfulness, for example, by showing how or why LCC determined plaintiffs were exempt employees or by showing that LCC sought an opinion from the DOL, an accountant, an attorney, or someone else about their overtime practices. Based on this analysis, the court holds that the arbitrator did not manifestly disregard the law when he concluded that the FLSA's three-year statute of limitations applies to

---

[5]   LCC asserts that an employer's "notice" of a potential violation based on one DOL investigation doesn't establish a willful violation as a matter of law. Doc. 145 at 18. It cites cases that, it contends, support its position that one DOL investigation doesn't suffice to show willfulness. *See id.* Plaintiffs respond with their own citations to cases finding willful violations based on an employer's notice of DOL or other agency investigations. Doc. 147 at 7–8 n.7 (collecting cases). LCC argues that these cases differ from the facts here for various reasons. Doc. 149 at 8. The court declines a trip into the thick weeds of the factual differences between these cases and the facts presented here to determine whether plaintiffs proved a willful violation to the arbitrator. Such a junket would violate the Tenth Circuit's highly deferential standard of review for arbitrator's decisions—a review that is "extremely limited" and "among the narrowest known to law." *THI of N.M.*, 864 F.3d at 1083 (citations, internal quotation marks, and emphasis omitted).

plaintiffs' claims because plaintiffs had come forward with evidence sufficient to prove willful FLSA violations.

In sum, none of LCC's arguments can shoulder the "heavy burden" required to vacate an arbitrator's award. *Oxford Health Plans*, 569 U.S. at 569. This case simply doesn't present the type of "very unusual circumstances" that would warrant vacating the arbitrator's orders under the FAA. *Id.* at 568. The court thus denies LCC's Cross-Motion to Vacate Arbitration Award (Doc. 144).

### B. Motion to Confirm Arbitration Award

Having decided that LCC provides no reason for the court to vacate the arbitrator's award, the court now addresses plaintiffs' request that the court issue an order confirming the arbitration awards.

#### 1. Jurisdiction

First, the court considers whether it has jurisdiction to confirm the arbitration award. "The question of a district court's jurisdiction to confirm an arbitration award is a two-step inquiry." *Int'l Label Serv., Inc. v. Engineered Data Prods., Inc.*, 15 F. App'x 717, 719 (10th Cir. 2001). *First*, the party seeking confirmation must establish federal subject matter jurisdiction. *Id. Second*, the movant must show that the parties agreed, either explicitly or implicitly, to subject the arbitration award to judicial confirmation. *Id.*

##### a. Subject Matter Jurisdiction

The parties don't dispute that this court has federal question jurisdiction under 28 U.S.C. § 1331.[6] Docs. 152 & 154. Just last year, our Circuit recognized that "when a court with

---

[6] Plaintiffs also assert that the court has diversity subject matter jurisdiction over this action under 28 U.S.C. § 1332 because "[d]efendant LLC is a citizen of the State of Virginia and [p]laintiffs are not." Doc. 154 at 3 n.5.

15

subject-matter jurisdiction orders arbitration and then stays the suit pending resolution of the arbitral proceedings, that court retains jurisdiction to confirm or set aside the arbitral award." *Dodson Int'l Parts, Inc. v. Williams Int'l Co. LLC*, 12 F.4th 1212, 1227 (10th Cir. 2021) (citation omitted). The parties agree that rule applies here. Doc. 152 at l–2, 5, 8; Doc. 154 at 2–4. The court has subject matter jurisdiction under 28 U.S.C. § 1331 over plaintiffs' original Complaint asserting FLSA claims because those claims arise under federal law.[7]

### b. The Parties Agreed to Judicial Confirmation

The parties don't dispute whether they expressly consented to judicial confirmation of the arbitration award. Also, the Tenth Circuit has recognized that "[a] party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the

---

[7]  The parties agree that the Supreme Court's recent decision in *Badgerow v. Walters*, 142 S. Ct. 1310 (2022), doesn't apply here. *Badgerow* held that the FAA's Sections 9 and 10 "do not themselves support federal jurisdiction." *Id.* at 1316. Instead, a "federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis.'" *Id.* (quoting *Hall St. Assocs.*, 552 U.S. at 588). Plaintiffs didn't file this action under the FAA's Section 9 or 10. Instead, plaintiffs filed this FLSA lawsuit invoking the court's federal question jurisdiction under 28 U.S.C. § 1331. The court stayed this lawsuit while the parties arbitrated the dispute. And now, after arbitration, the parties have applied to the court to confirm or vacate that arbitration award. Thus, applying *Dodson*, the court here "retains jurisdiction to confirm or set aside the arbitral award." *Dodson*, 12 F.4th at 1227.

Although our Circuit, post-*Badgerow*, hasn't addressed this precise question, courts outside the Tenth Circuit have continued to apply their Circuit's version of *Dodson*'s rule even after *Badgerow*. *See, e.g.*, *Rodgers v. United Servs. Auto. Ass'n*, No. 21-50606, 2022 WL 2610234, at *2 (5th Cir. July 8, 2022) (holding four months after *Badgerow* that "when a district court with jurisdiction over a case refers the case to arbitration and orders it administratively closed, the court retains jurisdiction over the case; in turn, [a federal appellate court has] jurisdiction to review the district court's subsequent decision to vacate or confirm an arbitration award after it reopens the case" and holding the court had jurisdiction to review an order confirming or vacating arbitration award where "district court had subject matter jurisdiction over the individual complaint, which brought FMLA claims against defendant"); *see also SmartSky Networks, LLC v. Wireless Sys. Sols., LLC*, ___ F. Supp. 3d ___, 2022 WL 4933117, at *4 (M.D.N.C. Sept. 26, 2022) (holding that its case didn't "appear to be within the scope of *Badgerow*" because plaintiff's "underlying claims were initially filed in federal court based, at least in part, on federal question jurisdiction[,]" the "case was stayed while the parties engaged in arbitration[,]" and "over a year later," plaintiff "moved . . . to confirm the award while [d]efendants moved to vacate it[,]" so "[u]nlike in *Badgerow*, where the action was brought to federal court only to vacate the arbitral decision," the action at issue "originated in federal court and ha[d] been pending [there] since[,]" so federal subject matter jurisdiction existed).

AAA, unless that party indicates otherwise in the contract." *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999). Here, the parties' Agreement provides that the parties agreed to arbitrate their dispute "in accordance with the then prevailing rules of the American Arbitration Association." Doc. 106-2 at 5. When plaintiffs filed their arbitration demand in 2017, the AAA Employment Arbitration Rules and Mediation Procedure in effect provided that "[p]arties to these procedures shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction." Rule 42(c), AAA Employment Arbitration Rules and Mediation Procedures, https://www.adr.org/sites/default/files/Employment-Rules-Web.pdf (last visited Dec. 15, 2022); *see also* Rule 5-52(c), AAA Commercial Arbitration Rules and Mediation Procedures, https://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf (last visited Dec. 15, 2022) (same). Thus, the parties agreed that a federal court may enter an order confirming the arbitration award. And the court has jurisdiction to enter an order confirming the arbitrator's awards.

### 2. Proper Tribunal

Next, the court addresses whether it is a proper tribunal to confirm the award. Section 9 of the FAA provides that if no court is specified in the agreement of the parties, then an application to confirm an award "may be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. The parties never argue that their arbitration agreements identified a particular court to confirm the arbitration award. Plaintiffs assert that the parties have stipulated to venue in this court; thus, the court has authority to confirm the award under 9 U.S.C. § 9. Doc. 136 at 3 (citing Doc. 80 at 3); *see also* 9 U.S.C. § 204 (providing that an action brought under the FAA "may be brought in any such court in which save for the

arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States"). LCC never disputes that assertion. Thus, the court concludes that it has authority under § 9 to confirm the award.

The FAA requires that a federal district court with jurisdiction to do so "*must* grant" a motion to confirm an arbitration award, "unless the award is vacated, modified, or corrected as prescribed in section 10 and 11 of this title." 9 U.S.C. § 9 (emphasis added). As already discussed at length, the court denies LCC's Cross-Motion to Vacate. And LCC has made no argument to "modify" or "correct" the arbitration award. Because there is no ground on which to vacate, modify, or correct the arbitration award, the court grants plaintiffs' Application for Order Confirming Arbitration Award (Doc. 136).

## IV. Conclusion

For reasons discussed, the court denies LCC's Cross-Motion to Vacate (Doc. 144). LCC has failed to shoulder its heavy burden of showing that the arbitrator exceeded his authority or manifestly disregarded the law in his Interim Award, Second Interim Award, or Final Award. Thus, the court rejects LCC's request for an order vacating the arbitrator's awards under the FAA's highly deferential standard of review.

Also, the court grants plaintiffs' Application for Order Confirming Arbitration Award (Doc. 136). Thus, this Order confirms the arbitrator's Interim Award, Second Interim Award, or Final Award under 9 U.S.C. § 9. Plaintiffs are entitled to Judgment confirming the Interim Award, Second Interim Award, or Final Award, including all such relief provided for in the awards, including, without limitation, judgment in favor of plaintiffs against LCC in the

individual amounts ordered by the Second Interim Award (Doc. 136-2) totaling $333,824.65, and the attorneys' fees and expenses awarded in the Final Award (Doc. 136-3) totaling $788,410 in attorneys' fees and $13,208.50 in expenses, plus post-judgment interest at the federal rate set forth in 28 U.S.C. § 1961(a). The court directs the Clerk of the Court to issue a Judgment consistent with this Order.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Application for Order Confirming Arbitration Award (Doc. 136) is granted.

**IT IS FURTHER ORDERED THAT** defendant LCC International, Inc.'s Cross-Motion to Vacate Arbitration Award (Doc. 144) is denied.

**IT IS FURTHER ORDERED THAT** the court directs the Clerk of the Court to issue a Judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**

**Dated this 31st day of January, 2023, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**